BYONG K. CHOI, Plaintiff-Appellant, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

First District (3rd Division)   No. 1—89—2177

Opinion filed July 10, 1991.—Rehearing denied August 26, 1991.

Thomas J. Nathan, of Lane & Munday, of Chicago, for appellant.

John W. Bell and Michael B. Gunzburg, both of Johnson, Cusack & Bell, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Byong K. Choi, brought this action against defendant Commonwealth Edison Company seeking recovery for injuries sustained when plaintiff fell on a concrete floor while working at a construction site. The trial court granted defendant's motion for summary judgment. On appeal, plaintiff argues that the trial court erred in granting defendant's motion for summary judgment because a genuine issue of material fact exists. In addition, he argues that the trial court erred by failing to recognize defendant's duty to provide a safe work place for workmen engaged in construction work on its premises and by failing to extend that duty to include taking precautions against the accumulation of water inside the building.

On January 10, 1979, plaintiff Choi was employed by Universal Power Piping, Inc. (UPP), as a welder at the Dresden Nuclear Power Plant, which is owned by defendant Commonwealth Edison Company. UPP was a subcontractor hired by Commonwealth Edison to complete installation of a decontamination flushing system in the Reactor 1 building. Plaintiff was working on the third-floor turbine deck receiving pipes brought in from the outside by UPP employees. While stored outside, the pipes became encrusted with snow and ice. Once inside, the pipes were raised from the ground floor to the third-floor turbine deck area by an overhead crane, which was operated by a Commonwealth Edison employee. Then, the pipe was taken from the crane, placed on a cart, and moved through the interlock hatch to the reactor building by UPP employees, including plaintiff. Snow and ice melted from the frozen pipes, forming puddles of water on the deck wherever the pipes were transported. Plaintiff was working in this manner all day prior to the accident.

As plaintiff and a co-worker were carrying a pipe, approximately 20 feet long and 10 inches in diameter, plaintiff slipped on water that was on the concrete floor. He fell backward, hitting his back on a pipe, and a floor spacer fell across his mid-section, causing injuries.

Previously, the appellate court upheld the trial court's summary judgment order for defendant regarding the Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, pars. 60 through 69). (*Choi v. Commonwealth Edison Co.* (1984), 129 Ill. App. 3d 878.) In plaintiff's second amended complaint, he alleged that defendant was guilty of several negligent acts in its supervision of the construction work. Defendant filed a motion for summary judgment, arguing that under Illinois law, it had no duty to take precautions against natural accumulations of snow, ice or water that were tracked into a building. Defendant noted that the UPP foreman's deposition stated that he did not inform Edison of the condition because it was the duty of the contractor's own employees to clean up after themselves. Defendant pointed out that the snow came from pipes that plaintiff and his co-workers had brought in and carried to the area.

In response to defendant's motion for summary judgment, plaintiff argued that defendant owed him a duty to maintain a reasonably safe work place because it retained control over the construction work performed by UPP employees and could stop the work in progress for safety or other reasons. Plaintiff also argued that defendant breached that duty by failing to provide a reasonably safe workplace and by failing to stop work that was being performed in an unsafe manner. In addition, plaintiff contended that the melted snow and ice that caused the unsafe condition did not accumulate naturally, was not transported into the building by pedestrian traffic, and was caused by defendant's refusal to allow the pipes to be brought into the building and cleaned off before being transported to the work area. Plaintiff notes that the deposition of Commonwealth Edison's superintendent stated that Commonwealth Edison employees had the responsibility to clean snow and ice which came into the building, had the authority to stop work being performed in an unsafe manner, and regularly inspected the area.

Concluding that the facts were essentially undisputed, the trial court ordered summary judgment for defendant. The trial court stated that there was a common law duty of an occupier of land to exercise reasonable care for the safety of people lawfully on the premises, but that duty did not extend to a building owner being required to mop up water from an accumulation of snow, ice or water brought inside a building construction site. The trial court indicated that it would be an impossible burden placed on an owner of a building construction site to require following the independent contractor's employees around, mopping up every drip of water brought in from the outside. The trial court further ruled that Commonwealth Edison did

not create the dangerous condition, but merely failed to clean up a mess which is common whenever building materials from the outside of a building are moved into a building.

The trial court analogized this case to *Lohan v. Walgreens Co.* (1986), 140 Ill. App. 3d 171, 173, which ruled that a landowner has no duty to clean up snow, ice or water that is tracked into a building from a natural accumulation on the outside. The trial court made no finding whether the accumulation inside the building was natural or unnatural, but did state that the water began as a natural accumulation of snow and ice on the pipes outside and was brought into the building the same way, as people tracking it on their feet. The trial court did not consider the expert's affidavit and deposition because it was not factually based. The expert did not actually examine the premises, the court noted, but merely looked at photographs.

After the trial court denied plaintiff's motion to reconsider, plaintiff appealed the summary judgment order. Plaintiff's argument emphasizes that Commonwealth Edison owed him a duty to maintain a safe workplace even though he was employed by an independent contractor hired by Commonwealth Edison. He asserts that the duty included mopping up water that accumulated on the building's floor when snow and ice from the pipes melted onto the floor, causing puddles of water. Plaintiff relies on cases holding that the landowner owes a duty to the employee of an independent contractor if the owner retains sufficient control over the contractor's work. (*Claudy v. City of Sycamore* (1988), 170 Ill. App. 3d 990; see *Haberer v. Village of Sauget* (1987), 158 Ill. App. 3d 313; *Tsourmas v. Dineff* (1987), 161 Ill. App. 3d 897; *Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625; *Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481.) These cases state that the duty owed is to maintain a reasonably safe workplace.

Even if the water began as a natural accumulation on the outside, plaintiff asserts, Commonwealth Edison's intervening acts caused the water to be unnaturally accumulated on the inside of the building. In the alternative, plaintiff states, the condition was aggravated by Commonwealth Edison because it would not allow the pipes to be stored inside where the snow and ice could be safely removed after it melted. Furthermore, plaintiff argues, the pipes were brought in from the outside and loaded onto an overhead crane operated by a Commonwealth Edison employee. The overhead crane then took the pipes to the third floor of the building, where UPP employees transported the pipes through a tunnel into the reactor building. By the time the pipes reached the third floor, the snow and ice was melting, and wa-

ter from the pipes was dripping on the floor. It is on that water that plaintiff fell and injured himself.

Defendant responds that the water was a natural accumulation tracked in from the outside by UPP employees, including plaintiff. It asserts that this situation should be treated the same as a natural accumulation tracked in from the outside by pedestrian traffic, thus creating no duty by the landowner.

Defendant relies on two types of cases: those concerning natural accumulations of snow, ice or water outdoors and those concerning snow, ice or water tracked into a building from the outside, whether tracked in by pedestrians' shoes, coats or umbrellas. In *Lohan* (140 Ill. App. 3d at 172), the plaintiff slipped and fell on water that had been tracked from the outside into the common hallway of the defendants' stores. The appellate court ruled that the owners did not have a duty to continuously remove the tracks left by customers who had walked through the natural accumulations of snow or water outside, tracking them inside. Even if the owner has knowledge that the accumulation caused a dangerous condition, the court stated, there is no duty if the accumulation is natural. *Lohan*, 140 Ill. App. 3d at 173. See also *Handy v. Sears, Roebuck & Co.* (1989), 182 Ill. App. 3d 969 (summary judgment in favor of defendant store affirmed where plaintiff slipped and fell on water located within store); *Shoemaker v. Rush-Presbyterian-St. Luke's Medical Center* (1989), 187 Ill. App. 3d 1040 (hospital had no duty to clean up natural accumulation of water tracked into hospital on pedestrians' coats and umbrellas); *Serritos v. Chicago Transit Authority* (1987), 153 Ill. App. 3d 265 (city transit authority had no duty where plaintiff fell on snow and slush covered steps of bus owned and operated by defendant).

The purpose of summary judgment is to determine whether a triable issue of fact exists. (*Haberer*, 158 Ill. App. 3d at 316.) It may be granted if the pleadings, exhibits, affidavits, and depositions on file establish that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); *Branson v. R & L Investment, Inc.* (1990), 196 Ill. App. 3d 1088, 1090.) Although the plaintiff does not have to try his case, he must provide a factual basis which would arguably entitle him to judgment. (*Handy*, 182 Ill. App. 3d at 972.) The determination that summary judgment is appropriate will not be reversed absent an abuse of the trial court's discretion such that the plaintiff's right to fundamental justice is violated. *Breeze v. Payne* (1989), 181 Ill. App. 3d 720, 727.

■ Commonwealth Edison owed plaintiff the duty to maintain a reasonably safe workplace, but it did not extend to taking precautions against water tracked inside from a natural accumulation outside. Duty is determined by considering a number of factors: the foreseeability of harm (*Breeze*, 181 Ill. App. 3d at 727), the likelihood of the injury, the magnitude of the burden of guarding against it, the consequences of placing that burden on the defendant, public policy, and social considerations. *Dealers Service & Supply Co. v. St. Louis National Stockyards Co.* (1987), 155 Ill. App. 3d 1075, 1080.

■ In Illinois, a landowner owes no duty where a natural accumulation of snow, ice or water exists on the outside or is tracked into a building by pedestrian traffic. (*Lohan*, 140 Ill. App. 3d at 172.) However, a property owner does have a duty and may be liable where the injuries are a result of an unnatural or artificial accumulation, or a natural condition aggravated by the owner's use of the area and creation of the condition. (*Handy v. Sears, Roebuck & Co.* (1989), 182 Ill. App. 3d 969, 971.) To establish a duty, the plaintiff must make an affirmative showing of an unnatural accumulation or an aggravation of a natural condition before recovery will be allowed. (*McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 549.) Plaintiff made no such showing in this case.

■ Therefore, summary judgment for defendant was proper. The water in the nuclear power plant was a continuation of a natural accumulation. There was no evidence presented that Commonwealth Edison did anything to aggravate the condition. To require an owner of a construction site to follow workmen around and immediately clean up any melting snow or ice or water that had been brought in from the outside would be too high a burden.

Affirmed.

WHITE and GREIMAN, JJ., concur.