CHARLES FREDERICK, Plaintiff-Appellant, v. NORTHWESTERN UNIVERSITY DENTAL SCHOOL, Defendant-Appellee.

First District (6th Division) No. 1—92—1446

Opinion filed May 28, 1993.

Robert A. Wolf, of Oak Park, for appellant.

Arlene C. Erlebacher and David B. Johnson, both of Sidley & Austin, of Chicago, and Martha P. Mandel, of Northwestern University, of Evanston, for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Charles Frederick, appeals from an order of the trial court granting summary judgment in favor of defendant, Northwestern University Dental School.

The relevant facts are as follows. On September 6, 1979, plaintiff was approved for admission to defendant's four-year dental program, and he entered the fall 1979 class. He was 40 years of age when he enrolled.

The core curriculum was comprised of classroom teaching and clinical participation. The Northwestern University Dental School Bulletin (Bulletin) clearly stated that all subjects in the core curriculum were considered essential and were required.

Plaintiff's first year of study was spent almost entirely in the classroom. In the second year, laboratory work was added, and the students were introduced to the various required clinics. The third and fourth years phased out classroom work and placed increased emphasis on the clinics, with the students spending much of their time performing dental work on actual clinic patients under the supervision of licensed dentists who were members of the faculty.

The Bulletin set forth the general rights, duties and obligations of dental students. In addition to other enumerated rights, dental students enjoyed the right to be free from discrimination on account of their age and other characteristics; to participate in classes of small group teaching with careful supervision and monitoring; to participate in clinical rotational assignments; to participate in teaching clinics under the supervision and guidance of instructors; to have their academic performance reviewed quarterly or more frequently when necessary and to receive warnings for poor performance; and to appeal a decision of academic dismissal.

In terms of the duties and obligations of students, the Bulletin highlighted the critical importance of clinical work and stated that the student's clinical progress would be evaluated by the faculty. Specifically, the Bulletin provided:

> "No student is recommended for graduation who has not satisfied the faculty that the experiences in the clinics of the School have prepared him or her adequately to serve the public as a practicing dentist."

Plaintiff's performance in classroom work during the first year was adequate, though undistinguished, according to defendant. In the first quarter of his first year, plaintiff achieved a grade point average of 1.73 on a 4.00 scale. For the next five quarters, plaintiff's quarterly grade point average ranged from 2.12 to 2.85. In the spring quarter of his second year, plaintiff was placed on academic probation for achieving a grade point average for that quarter of under 2.00.

Plaintiff began his clinical studies in the fall quarter of his junior year. In that quarter, he received "Unsatisfactory" progress grades in four of his seven clinic courses. He was placed on "clinic probation," which, as provided in the Bulletin, results "from multiple unsatisfactory clinic progress reports at the end of any quarter." In the winter quarter of his junior year, plaintiff received five "Unsatisfactory" progress grades out of a total of eight clinic courses, and his clinic probation was continued. The following quarter, plaintiff received a grade of "F" in his Operative Clinic course.

At the close of plaintiff's junior year, he had satisfactorily completed only three of the nine junior year clinic courses. Despite his unsatisfactory work in six clinic courses, plaintiff was originally given no failing grades, but instead was given six grades of "Incomplete" to allow him to attempt to complete the six clinics. More than one failing grade during an academic year would have made him subject to dismissal.

Because of plaintiff's failure to complete satisfactorily six of the required clinics, defendant sent plaintiff a warning letter, dated June 29, 1982, stating:

"Because of your unsatisfactory clinic achievement during your Junior year, the faculty seriously doubts that you will be able to graduate in June, 1983.

You are directed to present yourself to the Junior Progress Review Committee when it meets on Thursday, July 1. Be prepared to show your clinical progress data and explain why you have accomplished so little."

After plaintiff's appearance before the Junior Progress Review Committee, defendant wrote plaintiff a follow-up letter warning him that unless he demonstrated substantial improvement by September 1982, more severe sanctions would follow.

In the first quarter of his fourth year at school, plaintiff, while still working on his junior year requirements, received five "Unsatisfactory" clinical progress grades. Subsequently, on October 4, 1982, the Senior Progress Review Committee wrote to him expressing its "great concern about the quantity and quality of [his] clinical achievement." Plaintiff was directed to a specific dean for counseling. On December 10, 1982, three of plaintiff's instructors in one of the clinics collectively wrote to the department head of that clinic, stating:

"At this stage, [plaintiff] has not demonstrated that he possesses the requisite knowledge and skills for assuming the responsibilities of patient treatment.

He is presently working on a three-unit bridge with Dr. Cassidy, and at no stage has he shown any understanding of what is involved. He has been unable to accomplish satisfactory preparations, impressions, occlusal records, and index, and is unable to follow Faculty instructions."

The Senior Progress Review Committee, which is responsible for the overall evaluation of fourth-year students' progress, recommended that plaintiff either withdraw from the dental school or be dismissed. This recommendation was submitted to the Academic Review Board (Board) for approval, amendment or reversal, pursuant to the proce-

dures set forth in the Bulletin. Plaintiff was informed of the recommendation by letter dated January 7, 1983, and was invited to appear before the Board to present any matters he wished to have considered.

The Board convened on January 14, 1983, and upheld the recommendation of the Senior Progress Review Committee that plaintiff be dismissed from the dental school. The Board ordered that plaintiff be given 10 days to withdraw to avoid dismissal. Plaintiff did not appear before the Board on the scheduled date.

Plaintiff was advised that the decision of the Board was appealable to the dean and Administrative Council of the dental school. Plaintiff exercised this option for further review. He appeared before the dean and Administrative Council on February 2, 1983. Plaintiff presented a written statement and demanded the right to be represented by counsel and to call and cross-examine witnesses. These demands were refused. The dean and Administrative Council subsequently approved the decision of the Academic Review Board to dismiss plaintiff. Plaintiff was given five days to withdraw before being dismissed from the school.

Thereafter, plaintiff filed a complaint in the circuit court of Cook County. His original complaint, containing four counts, was dismissed on February 3, 1987. He then filed an amended complaint, also containing four counts. However, count I was later voluntarily dismissed by plaintiff, as were all requests for injunctive relief.

Count II of the amended complaint alleged that defendant breached its contract with plaintiff, the terms of which were contained in the Bulletin, by discriminating against him on account of his age. In count III, plaintiff alleged that defendant breached various other contractual obligations such as providing him with small group teaching, patients for clinical work, close supervision, and notification of academic deficiencies. Finally, in count IV, plaintiff alleged breach of contract because of defendant's refusal to allow him to be represented by counsel and to call and cross-examine witnesses during the final academic hearing on his dismissal.

Defendant filed a motion for summary judgment, presenting in support of the motion plaintiff's academic file. In response, plaintiff filed an affidavit explaining why, in his view, he had failed his clinical courses. In that response, plaintiff also raised for the first time the claim that certain grading procedures applied to him were arbitrary and capricious. On March 24, 1992, the trial court issued an order granting defendant's motion for summary judgment.

Summary judgment should be granted only if the pleadings, depositions, admissions and affidavits reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Neofotistos v. Metrick Electric Co.* (1991), 217 Ill. App. 3d 506, 577 N.E.2d 511.) In determining whether a genuine issue of material fact exists, the trial court must view the evidence in the light most favorable to the nonmoving party. (*Neofotistos,* 217 Ill. App. 3d 506, 577 N.E.2d 511.) The trial court may draw inferences from undisputed facts, but where reasonable persons could draw divergent inferences from those facts, the issue should be decided by the trier of fact and the motion for summary judgment should be denied. *Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 586 N.E.2d 1211.

■■ Defendant argues that summary judgment was proper here because its decision to dismiss plaintiff was based solely on his failure to meet established academic standards. Courts have been loathe to review, much less overturn, academic dismissals. In this regard, the United States Supreme Court, in *Board of Curators of the University of Missouri v. Horowitz* (1978), 435 U.S. 78, 89-90, 55 L. Ed. 2d 124, 135, 98 S. Ct. 948, 955, stated:

"The decision to dismiss respondent *** rested on the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal. Such a judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision. Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking."

■ Plaintiff contends that defendant's stated reason for dismissing him from school, namely, academic incompetence, was merely a pretext offered to disguise the real reason for his dismissal. Initially, plaintiff argues that his dismissal was the result of a practice of age discrimination on the part of several of his professors. In support, plaintiff points to two situations in which he was afforded less favorable treatment than younger students. On one occasion, plaintiff claims that he and an unidentified "younger Chinese student" received the identical grade of "C" even though his work was praised by two professors and the younger student's work was, in plaintiff's

view, "patently substandard." On another occasion, a younger student received remedial help in all of his classes and "even received special help from a professor," but plaintiff was refused such help.

As to the first incident, we note that while the grades plaintiff and the younger student received may have been the same, the clinical assignments on which they were graded were completely different and thus inevitably involved distinct grading criteria. We are not at liberty to second-guess how defendant applied that criteria to plaintiff, the younger student, or any student. The Supreme Court in *Horowitz* specifically stated that "[c]ourts are particularly ill-equipped to evaluate academic performance." (*Horowitz*, 435 U.S. at 92, 55 L. Ed. 2d at 136, 98 S. Ct. at 956.) Moreover, plaintiff has offered no evidence, apart from his affidavit in which he concludes that the younger student's grade was too high, to support his contention that his grade was adversely affected on account of his age.

Similarly, plaintiff has offered no support for his allegation that he was afforded less remedial help than a younger student solely because of his age. Indeed, the record indicates that plaintiff himself was given several opportunities to remedy deficiencies. He received remedial placement in one class which, in the trial court, he argued was evidence of *prejudice*. Furthermore, rather than giving plaintiff a failing grade in those clinical courses he did not complete during his junior year, defendant gave him grades of "Incomplete" to allow him to attempt to complete them during his final year. This was a step defendant need not have taken since, as the Bulletin indicates, failure in two courses during an academic year would have made plaintiff "subject to dismissal." In addition, prior to being dismissed, plaintiff was given warning letters, offered counseling, and granted hearings to discuss his academic performance before the Junior Progress Review Committee, the Academic Review Board, and the dean and Administrative Council. Plaintiff has not suggested that a younger student with a comparable academic record received more favorable treatment. While plaintiff did not have to prove his case in opposition to defendant's motion for summary judgment, he was required to offer some factual basis which would arguably entitle him to judgment on his age discrimination claim. (*Choi v. Commonwealth Edison Co.* (1991), 217 Ill. App. 3d 952, 578 N.E.2d 33.) This, plaintiff has failed to do. Thus, as to this aspect of his age discrimination claim, summary judgment was properly granted.

■ Plaintiff also argues that he has presented facts from which a claim of disparate impact can be made. Specifically, plaintiff asserts that three of his professors, because of their Australian heritage, har-

bored animus against him for leaving an established career in engineering to pursue a career in dentistry. Plaintiff bases this claim on a conversation with one of the Australian professors in which the professor relayed to plaintiff that he passed up an opportunity to attend medical school because he had already completed dental school. From this conversation, plaintiff surmises that the Australian professor believed that no one should ever change professions, as plaintiff was attempting to do; that because of his belief the professor discriminated against plaintiff; that the belief of this one professor is shared by the other two Australian professors; that therefore these professors were biased against plaintiff; and that a prejudice against persons who change professions has a disparate impact on persons over the age of 40. (As to the latter point, plaintiff argues that the attitude allegedly shared by the three Australian professors can only have a disparate impact on older students since only an older student could have had a different career prior to switching to dentistry.) Plaintiff again has offered no evidence to support this theory. We cannot reasonably infer from the autobiographical data relayed to plaintiff by a single Australian professor that plaintiff was the victim of some subtle scheme involving a ring of Australian professors to oust him from dental school. This specious argument becomes more unbelievable since the Australian professors involved in the alleged conspiracy taught in only two of the five clinical courses defendant failed to complete. Moreover, one of plaintiff's few "Satisfactory" clinic progress grades was in a clinic in which two of the Australian professors taught. As to this aspect of plaintiff's age discrimination claim, summary judgment was also proper.

In addition to his age discrimination claim, plaintiff asserts that defendant's academic treatment of him was arbitrary and capricious, in breach of its contract with him.

A college or university and its students have a contractual relationship, and the terms of the contract are generally set forth in the school's catalogs and bulletins. (*Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 445 N.E.2d 901.) A contract between a private institution and a student places duties upon both parties which cannot be arbitrarily disregarded and may be judicially enforced. A student may have a remedy for breach of contract when it is alleged that an adverse decision concerning the student, supposedly for academic deficiencies, was made arbitrarily, capriciously, and in bad faith. *Illinois Benedictine College*, 112 Ill. App. 3d 932, 445 N.E.2d 901.

The burden of establishing arbitrary and capricious conduct is a heavy one. In this case, plaintiff must show that his dismissal was

"without any discernible rational basis." (*Holert v. University of Chicago* (N.D. Ill. 1990), 751 F. Supp. 1294, 1301.) As the court in *Holert* explained, "[c]ourts have adopted this deferential standard because of a reluctance to interfere with the academic affairs and regulation of student conduct in a private university." *Holert*, 751 F. Supp. at 1301.

In support of his arbitrary and capricious claim, plaintiff first complains that his final grade in the Operative Clinic was an "F," "even though he received no failing grades on any of the projects making up the course." However, as defendant points out and as plaintiff earlier admitted, after two quarters of his *fourth* year at the dental school, he had attained senior status in only one of four areas encompassed by the Operative Clinic. This clinic work was to have been completed during plaintiff's junior year, and because he failed to remove his grade of "Incomplete" for this clinic by the end of the fall quarter of his fourth year, defendant, in keeping with the provisions contained in the Bulletin, appropriately gave plaintiff a failing grade.

Plaintiff also maintains that he received grades of "Incomplete" in other clinic courses because certain professors deliberately refused to give him patients to work on, took patients away from him, and gave him "unusually difficult" patients, all in an effort to ensure that he did not succeed in dental school. Plaintiff again has presented no evidence to support the allegation that his instructors' decisions regarding patients assigned to him were made in bad faith to deliberately stymie his academic progress. In fact, as to one particular clinical course, plaintiff in his brief states that he received a grade of "Incomplete" because defendant failed to give him enough patients on which to work. In his affidavit, however, plaintiff claimed to have received an "Incomplete" in that course because of his failure to complete a procedure *on an assigned patient*. As stated, plaintiff is not required to prove his case in response to defendant's summary judgment motion, but "he must provide a *factual basis* which would arguably entitle him to judgment." (Emphasis added.) (*Choi*, 217 Ill. App. 3d at 956, 578 N.E.2d at 37.) Absent such evidence, we must presume that the professors' decisions, of which plaintiff complains, were made with legitimate academic and professional concerns in mind.

In further support for his contention that defendant engaged in arbitrary, capricious, and bad-faith conduct in dismissing him, plaintiff asserts that certain professors lied to the Academic Review Board about a letter presented to the Board by those professors. That letter, dated December 10, 1982, informed the committee that plaintiff had not yet (midway through his fourth year) "demonstrated that he possesse[d] the requisite knowledge and skills for assuming the responsi-

bilities of patient treatment." Notwithstanding that the letter was dated December 10, 1982, plaintiff now claims that the letter was in fact written in September 1982, at a time before all three of its authors had personal knowledge of his clinical deficiencies. According to plaintiff, he first learned of the letter from one of its authors in September 1982.

As defendant points out, however, plaintiff earlier told a different story. In his amended complaint, plaintiff alleged that at the time of his dismissal, sometime between December 1982 and January 1983, the letter was "unknown to him" and had been "circulated without his knowledge or ability to refute." In his response to defendant's demand for a bill of particulars, plaintiff asserted that he first learned of the letter from a fellow student—not from one of its authors—and its existence was later verified by one of his professors "during the time period after [his] academic review but before his appeal of the academic review."

Plaintiff cannot create a genuine issue of material fact by making assertions directly contrary to earlier ones. (*Smith v. Ashley* (1975), 29 Ill. App. 3d 932, 332 N.E.2d 32.) Having stated in his pleadings that he first learned of the letter through a fellow student at some point after he was dismissed, plaintiff cannot, in defendant's words, "rewrite history," to place discovery of the letter before his dismissal and name as the source one of its authors.

■ Plaintiff also contends that he was not afforded a genuine opportunity to protest his dismissal, despite a contractual obligation on the part of defendant to do so. Plaintiff initially complains that he was not allowed to present evidence from a faculty department head who allegedly would have stated that he personally observed plaintiff successfully and competently perform the clinical tasks which the three professors in their 1982 letter claimed plaintiff was incapable of performing. Plaintiff also claims that he was deprived of his right to be represented by counsel and to compel the attendance of certain professors—namely, the authors of the December 1982 letter—for questioning.

Our review of the Bulletin, spelling out defendant's contractual obligations, reveals nothing which would indicate that plaintiff was entitled to call his own witnesses, cross-examine witnesses against him, or be represented by counsel before any of the various reviewing bodies. Nor does the law require that such procedures be followed in an academic hearing conducted by a private educational institution. (See *Horowitz*, 435 U.S. 78, 55 L. Ed. 2d 124, 98 S. Ct. 948.) The only contractual obligation defendant owed plaintiff was to allow him

to be present when the Academic Review Board and the dean and Administrative Council reviewed his case. Defendant fulfilled this obligation.

In summary, we find that plaintiff has presented no facts to support the claim that his dismissal was the result of arbitrary, capricious, and bad-faith conduct on the part of defendant. Nor has he presented any facts tending to show that defendant discriminated against him on account of his age. Plaintiff has not shown that the education he received was anything less than that to which he was entitled. Rather, he has offered only bare allegations of wrongdoing supported by mere personal opinion and speculation. In determining the genuineness of a fact on a summary judgment motion, the court should ignore personal conclusions, opinions, and self-serving statements and consider only facts admissible under the rules of evidence. (*Farm Credit Bank v. Isringhausen* (1991), 210 Ill. App. 3d 724, 569 N.E.2d 235.) The record strongly supports the reasoning behind defendant's decision to dismiss plaintiff. The trial court properly granted defendant's motion for summary judgment.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and GIANNIS, JJ., concur.