Nos. 3-00-0860 & 3--01--0331

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

ILLINOIS BELL TELEPHONE CO. ) 

(Ameritech Illinois), )   

) 

Petitioner-Appellant, ) Appeal from the Orders of the

) Illinois Commerce Commission

    v. ) in Ill. C.C. Dkt. No. 99--0615

) 

ILLINOIS COMMERCE COMMISSION, ) 

               )

Respondent-Appellee. ) 

_________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

This is an appeal from the Orders of the respondent, the Illinois Commerce Commission ("Commission"), regarding the amendment of a collocation services tariff
(footnote: 1) proposed by the petitioner, Illinois Bell Telephone Company d/b/a Ameritech ("Ameritech").  The proceedings in this case began on October 5, 1999, when Ameritech filed several revised tariff sheets (collectively, "the amended tariff").  The Commission reviewed the amended tariff and found that the proposed expansion should be suspended until it had held a hearing on the propriety of Ameritech’s amended tariff.  Several competitive local exchange carriers ("CLECs") intervened in this case including AT&T Communications of Illinois, Inc., Sprint Communications L.P., Nextlink Illinois, Inc., Rhythms Links, Inc., Covad Communications and MCI World Com, Inc.  Hearings were held before a Commission hearing examiner on January 5, January 31, February 29, and March 9, 2000.  Evidentiary hearings were held on May 23 and 24, 2000.  The Commission filed its order on August 15, 2000.  It rejected the terms and conditions upon which Ameritech offered shared and adjacent structure collocation.  It also found that Ameritech’s cost studies and prices should be rejected because its cost support was insufficient.  It therefore ordered a 50% reduction in central office build-out charges pending submission of a new cost study within 60 days.  After its applications for rehearing were denied, Ameritech appealed. 

I.  FACTS

A.  Background information

Ameritech’s amended tariff was filed in compliance with the Federal Communication Commission’s ("FCC") Deployment of Wireline Services Offering Advanced Telecommunications Capability, First Report and Order of Further Notice of Proposed Rulemaking in FCC Docket Number 98--147, released March 31, 1999 (the "Advanced Services Order" or "ASO").  The ASO addressed issues regarding collocation, spectrum compatibility and line sharing.  With respect to collocation, the FCC required incumbent local exchange carriers ("ILECs") to provide three new forms of collocation: shared cage, cageless and (when space is exhausted) adjacent structure collocation.  On March 17, 2000, the United States Court of Appeals for the District of Columbia Circuit affirmed in part and remanded in part the ASO.  
GTE Service Corp. v. F.C.C.
, 205 F.3d 416 (D.C. Cir. 2000).     

B.  The Commission’s rulings

1.  Shared collocation arrangements

Shared collocation is an arrangement in which two or more CLECs share a single collocation cage.  Ameritech’s amended tariff required that CLECs wishing to share collocation space designate a primary collocator that would deal directly with Ameritech regarding the shared collocation space.  The primary collocator would negotiate its own terms and conditions with any secondary collocators with which is wished to share space.  The proposed arrangement was a type of sub-lease.  

Before ruling on Ameritech’s proposed arrangements for shared collocation, the Commission set out the CLECs’ position on this issue.  The CLECs contended that Ameritech’s proposed shared cage collocation arrangement was unreasonable because it placed an undue burden on the primary collocator, who was unlikely to be familiar with the business plans or equipment of the secondary collocators, to contract directly with Ameritech for other services.  AT&T noted that even Ameritech’s witness conceded that Ameritech’s proposal put the burden on the primary collocator to insure that all secondary collocators met Ameritech’s requirements for compliant equipment.  AT&T further emphasized that Ameritech’s shared cage collocation proposal not only placed an unfair hardship on the primary collocator, but it also was nothing more than a blatant attempt on the part of Ameritech to discourage CLECs from using shared collocation arrangements. 

The Commission initially noted that the scope of its inquiry was to determine whether Ameritech’s collocation services tariff were just, reasonable, and non-discriminatory.  It then found that the ASO created a rebuttable presumption that if any ILEC offered a collocation arrangement in any jurisdiction that same collocation arrangement was presumed to be technically feasible in Illinois.  It noted that Southwestern Bell Telephone Company ("SWBT"), a sister affiliate of Ameritech, provided a tariffed shared cage collocation arrangement in which SWBT billed each CLEC separately for unbundled network elements ("UNEs") and all interconnection arrangements.  SWBT also made each CLEC responsible for its own performance under the tariff.  The Commission noted that Ameritech offered no evidence that it was not technically feasible for it to offer that same shared cage arrangement to CLECs desiring to collocate in its premises in Illinois.  Therefore, the Commission required Ameritech to import the "best practices" of SWBT and offer CLECs the option, via tariff, of a shared cage collocation arrangement similar to that offered in Texas whereby each CLEC in a shared cage arrangement contracts directly with Ameritech for all floor space, power, cabling, transport, UNEs, and interconnection.  It also held that in order to ensure that no collocator is responsible for the actions of other collocators in a shared cage, the tariff should state, as the Texas tariff does, that "[A]ll collocators, including those who are sub-leasing the caged space, are bound by the terms and conditions of this tariff."  Accordingly, the Commission ruled that all language in the proposed tariff requiring the primary CLEC to be responsible for the actions of the secondary CLEC was to be stricken.

2.  Adjacent structure collocation arrangements

Adjacent structure collocation is an arrangement, for central offices which have no remaining collocation space, in which collocators can place their equipment in a controlled environmental vault, equipment hut, or similar space on the central office premises, but outside the office itself.  This would be accomplished by building a structure near the central office building.  Ameritech argued that adjacent space allocation should not be made standard for three reasons:  (1) the arrangement is very uncommon and therefore the need is minimal; (2) neither ILECs nor CLECs have any significant experience with this arrangement and no such arrangements currently existed in the country; and (3) the arrangement would be inappropriate because of the large number of variables involved that would greatly affect the cost of the arrangements (surface and underground conditions, code and zoning restrictions, cable entrance facilities, building expansion plans, etc.).  

With respect to requiring Ameritech to tariff adjacent on-site collocation as a standard physical collocation offering, the Commission deferred to the FCC’s rebuttable presumption that unless Ameritech demonstrates why it is not technically feasible to offer it on a standard basis as SWBT does, Ameritech must offer it in Illinois.  It found that SWBT tariffed adjacent collocation as a standard offering and that Ameritech had offered no credible evidence to indicate that it was not technically feasible to offer adjacent on-site collocation as a standard physical collocation offering in Illinois.  

The Commission also expressed concern that the non-standard collocation request process that Ameritech proposed the CLECs use for adjacent collocation created significant cost and delay into processing CLECs collocation requests.  It said that if the CLEC had to resort to the Commissions’ complaint process, its collocation request could be on hold for a year or more, which would severely hamper any type of competitive entry in Illinois.  Finally, it noted that requiring Ameritech to provide adjacent on-site collocation as a standard offering would help eliminate the risk of discrimination since all CLECs will be paying the same amount of money and would be subject to the same intervals, terms and conditions.  Therefore, the Commission found  that Ameritech should adopt the "best practices" of its sister affiliate, SWBT, and tariff adjacent on-site collocation as a standard offering in Illinois.

3.  Central Office Build-Out ("COBO") Charges 

On May 23, 2000, Douglas Price, Director of  Rates in the telecommunications division of the Illinois Commerce Commission, testified that he had reviewed the cost study submitted by Ameritech.  Douglas, a 44-year veteran of the telecommunications division, recommended a 50% reduction in Ameritech’s proposed labor times.  In his testimony, he gave several reasons for the reduction.  Among those reasons, he noted that Ameritech’s labor times appeared excessive; the cost study may recover inappropriate costs from CLECs in its rates; the total required floor space in the cost of an alternative collocation arrangement appeared excessive; the security costs in the study were unsupported and questionable; and no cost support was provided for converting virtual collocation arrangements to cageless arrangements.  Finally, Douglas noted that Ameritech’s reported times were alarmingly high, that there were redundancies included within specific work groups and among different work groups, and that even when labor times were cut in half it appeared that Ameritech would have ample time to accomplish the necessary tasks. 

The Commission agreed with Price’s findings and found that many of Ameritech’s proposed costs were overstated and that the cost support provided was grossly insufficient.  Therefore, the Commission concluded that collocation costs, including security costs, should be pro-rated based on square footage, including the square footage occupied by Ameritech, consistent with the requirements in the ASO.  It then adopted Price’s recommendation of a 50% reduction in COBO charges. 

4.  Final orders

At the conclusion of its order, the Commission made the following findings which are pertinent to this appeal:  

"(5) it is technically feasible and constitutes good competitive policy to require Ameritech to tariff a shared cage collocation arrangement in which each CLEC contracts directly with Ameritech for UNEs, interconnection, power, transport, floor space, cabling, etc. as SWBT does in Texas and not have one CLEC be responsible for the actions (legally or otherwise) of another CLEC in a shared cage;

***

(7) it is technically feasible and constitutes good competitive policy to require Ameritech to provide adjacent on-site collocation as a standard tariff offering as SWBT does in Texas;                             ***

(10) Ameritech’s cost studies and the prices based thereon should be rejected because its cost support is insufficient.  Ameritech shall file new cost studies based on an efficient, forward-looking environment consistent with our conclusions herein within 60 days of the effective date of this Order.  In the interim, we adopt Staff’s recommendations; Ameritech’s prices, as adjusted by Staff are accepted as interim rates until the outcome of the upcoming docket examining the entirety of rates to be charged for collocation;"

The Commission then ordered Ameritech to revise its collocation tariff within 10 days of the effective date of its order to conform with the above findings.

II.  ANALYSIS

A.  Legal standard used to review the amended tariff

On appeal, Ameritech first argues that the Commission applied the wrong legal standard in reviewing the provisions of the amended tariff governing both shared collocation and adjacent structure collocation.  Specifically, Ameritech argues that the Commission ignored the statutory "just and reasonable" standard and instead simply found that the Commission used the SWBT tariff to find that the terms and conditions proposed by the CLECs were technically feasible and therefore the "best practice."  According to Ameritech, the Commission then ordered that those terms and conditions be provided in Illinois without any attempt to determine whether they were just and reasonable.   

The Illinois Public Utilities Act (Act) requires that the prices, terms and conditions for collocation services be just and reasonable.  220 ILCS 5/9--101, 201(c) (West 2000).  Further, section 9--201 of the Act provides that when the Illinois Commerce Commission investigates a tariff, it "shall establish the rates or other charges, classifications, contracts, practices, rules or regulations proposed, in whole or in part, or others in lieu thereof, which it shall find to be just and reasonable."  220 ILCS 5/9--201(c).  

The Illinois Commerce Commission is an administrative agency, and judicial review of its orders is limited.  
Illinois Power Company v. Illinois Commerce Commission
, 316 Ill. App. 3d 254, 736 N.E.2d 196 (2000).  The Commission’s findings of fact are 
prima
 
facie
 correct and will not be overturned by a reviewing court unless they are against the manifest weight of the evidence.  
People ex rel. Hartigan v. Illinois Commerce Commission
, 148 Ill. 2d 348, 592 N.E.2d 1066 (1992).  However, the Commission’s interpretation of a question of law is not binding on a court of review.  
Archer-Daniels-Midland Company v. Illinois Commerce Commission
, 184 Ill. 2d 391, 704 N.E.2d 387 (1998).  The review of a question of law in the appellate court is 
de
 
novo
.  
Continental Mobile Telephone Company v. Illinois Commerce Commission
, 269 Ill. App. 3d 161, 645 N.E.2d 516 (1994).   We agree with Ameritech that the question of whether the Commission used the wrong legal standard is one of law and should not be entitled any deference.  Therefore, we shall review this issue 
de
 
novo
.  

Ameritech does not dispute that the shared collocation and adjacent structure collocation that SWBT employs are technically feasible in Illinois.  It simply contends that technical feasibility alone does not make a practice just and reasonable.  We agree.  However, a complete review of the Commission’s order demonstrates that it did not use an incorrect standard.  First, in its final order, the Commission explained that the scope of its inquiry was to determine whether Ameritech’s collocation services tariff and amended tariff were just, reasonable, and non-discriminatory.  The fact that shared and adjacent structure collocation were technically feasible was only one part of the Commission’s finding.  With respect to both types of collocation, the Commission found that it was not only technically feasible for Ameritech to provide these arrangements but, based on the record in this case, constituted good competitive policy.  Although it did not specifically list why shared cage collocation constituted "good competitive policy," it set out the CLECs’ reasons why Ameritech’s proposal was unreasonable.  Specifically, the CLECs complained that:  (1) Ameritech’s proposal placed an undue burden on the primary collocator to contact directly with Ameritech on behalf of the other collocators when the primary collocator had no knowledge of the secondary collocators’ business plans and equipment; and (2) this "sub-lease" type of arrangement was nothing more than a blatant attempt on Ameritech’s part to discourage CLECs from using shared collocation arrangements.  We find that a reading of the entire order indicates that the Commission did not simply rely on SWBT’s tariff and use a "best practices" standard but instead analyzed Ameritech’s shared collocation arrangements under a "just and reasonable" standard. 

With respect to adjacent structure collocation, the Commission gave detailed reasons why, along with technical feasibility, Ameritech should be required to offer adjacent collocation on a standard basis.  It noted that the non-standard collocation request process that Ameritech proposed the CLECs use for adjacent collocation would:  (1) cause significant cost and delay into processing the CLECs’ collocation requests; and (2) cripple the competitive entry which the state of Illinois condoned.  Finally, the Commission noted that requiring Ameritech to provide adjacent on-site collocation as a standard offering would help eliminate the risk of discrimination since all CLECS would be paying the same amount of money and would be subject to the same intervals, terms, and conditions.  For these reasons, we find that the Commission also used the proper "just and reasonable" standard when it reviewed the provisions of the amended tariff governing adjacent structure collocation.  

Within this argument, Ameritech contends that the Commission wrongfully relied upon the SWBT tariff as evidence of "best practices".  According to Ameritech, the SWBT tariff should not have been admitted into evidence because other tariffs are irrelevant to determining just and reasonable rates unless the proponent of the evidence makes a threshold showing that the underlying conditions are similar, which did not occur in this case.  To support its contention, Ameritech cites to 
Atchison, Topeka & Santa Fe R.R. Co. v. Illinois Commerce Commission
, 335 Ill. 624, 167 N.E. 831 (1929) (orders from other jurisdictions are not relevant to review of Commission decisions).  We need not determine whether this is a correct assessment of the law because the Commission only looked at the SWBT tariff to determine whether shared and adjacent structure collocation was technically feasible in Illinois, not whether the amended tariff rates were just and reasonable.  Ameritech does not dispute technical feasibility in this case.  Therefore, we find this issue to be without merit.

B.  COBO Charges

Next, Ameritech argues that the Commission’s adjustment of the Central Office Build-Out ("COBO") charges ignored the legal presumption that Ameritech’s cost studies were valid and failed to determine just and reasonable COBO rates based on the evidence in the record.  

In proceedings before the Commission, once a utility makes a showing of the costs necessary to provide service under its proposed charges, it has established a 
prima
 
facie
 case.  
City of Chicago v. People of Cook County
, 133 Ill. App. 435, 478 N.E.2d 1369 (1985).  The burden then shifts to others to show that the costs incurred by the utility are unreasonable because of inefficiency or bad faith.  
City of Chicago v. People of Cook County
, 133 Ill. App. 435, 478 N.E.2d 1369 (1985). 

One of the basic functions of the Commission is to evaluate the evidence before it.  
People ex rel. O’Malley v. Illinois Commerce Commission
, 239 Ill. App. 3d 368, 606 N.E.2d 1283 (1993).  The credibility of expert witnesses and the weight to be given their testimony are matters for the Commission as the trier of fact.  
Lefton Iron & Metal Company v. Illinois Commerce Commission
, 174 Ill. App. 3d 1049, 529 N.E.2d 610 (1988).  The Commission enjoys broad discretion and  its findings will not be overturned unless they are against the manifest weight of the evidence.  
People ex rel. Hartigan v. Illinois Commerce Commission
, 117 Ill. 2d 120, 510 N.E.2d 865 (1987).  

Here, we agree with Ameritech that once it submitted its costs studies it made a 
prima
 
facie
 case supporting its collocation costs.  It was then incumbent upon the staff to show that the costs incurred by Ameritech were unreasonable.  We have reviewed the testimony of Commission staff member Douglas Price and conclude that his testimony, which was accepted by the Commission, was adequate to support the conclusion that Ameritech’s cost studies were insufficient.  Douglas, a 44-year veteran of the telecommunication industry, had sufficient expertise to testify about the insufficiency of Ameritech’s cost support.  Among other findings, Douglas testified that Ameritech’s reported times were alarmingly high, that there were redundancies included within specific work groups and among different work groups, and that even when labor times were halved it appeared that Ameritech would have ample time to accomplish the necessary tasks.  The Commission adopted these findings and ordered a 50% reduction until Ameritech filed new cost studies.  Since they are not contrary to the manifest weight of the evidence, the Commission’s findings will not be disturbed.

The Order of the Illinois Commerce Commission is affirmed.

Affirmed.

LYTTON, P.J., and BRESLIN, J., concur.

FOOTNOTES
1: Collocation is the placement by competitive local exchange carriers of equipment necessary for interconnection or access to unbundled network elements in telephone central offices owned by incumbent local exchange carriers.