No. 2--02--1388 

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

BETTY RAETHZ, ) Appeal from the Circuit Court

) of Kane County.

Plaintiff-Appellee, )

) 

v. ) No. 00--MRK--176

)

AURORA UNIVERSITY, ) Honorable

) Patrick J. Dixon
,

Defendant-Appellant. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE BYRNE delivered 
the
 opinion of 
the
 court:

Plaintiff, Betty Raethz, a student, filed a four-count complaint against defendant, Aurora University, 
for damages based on her allegedly wrongful expulsion from 
the
 school's master's in social work program.  The trial court granted the University summary judgment as to count IV and, following a bench trial, found for 
the
 University as to counts I and III.  As to count II, 
the
 only count at issue on appeal, the trial court held
 that 
the
 University breached an agreement created by 
the
 University's School of Social Work Handbook (Handbook) and 
the
 Field Instruction Manual, and granted judgment to 
plaintiff
 for $31,469.
  We reverse because 
the
 trial court misapplied 
the
 law, which required a finding that 
the
 dismissal was based on arbitrary, capricious, or bad-faith conduct
.

Plaintiff 
enrolled in 
the
 program in 
the
 fall quarter of 1997.  According to 
the
 Handbook, a student 
must successfully complete 60 credits to receive a master's degree; 
18 credits must be earned through successful completion of field instruction.
 
 
While field instructors complete evaluations based on a student's performance at an agency, 
the
 University is ultimately responsible for assigning a grade for field work.  Under 
the
 terms of 
the
 Handbook, "[t]wo consecutive terms of below standard work resulting in a 'no credit' grade in Field Instruction is cause for dismissal from 
the
 MSW Program."

Plaintiff chose three field work assignments.  For her first assignment, 
plaintiff
 worked at 
the
 Hospice of Northeastern Illinois.  Plaintiff received credit for this field instruction work.  Next, 
she
 chose Northwest Action Against Rape (NWAAR).  
Ultimately, 
plaintiff
's supervisors could not recommend that 
plaintiff
 receive a passing grade for her field work at NWAAR.  However, she was not given a failing grade; instead she was given a deferred grade, an "X," which according to 
the
 Handbook is to be used when a course is not 
completed.  
Plaintiff chose to do her third field work assignment at Alexian Brothers Behavioral Health Hospital.  That assignment also did not fare well.  On January 26, 1999, Alexian Brothers decided to terminate 
plaintiff
's placement due to her performance, and she
 
received "No Credit" for her field work.  

Because 
plaintiff
 received no credit for her fall 1998 field work assignment at Alexian Brothers, she was given a letter grade of "F" by 
the
 University for that class.  Because she failed to fulfill 
the
 requirements of a remediation plan and 
a
 learning agreement, which were developed after her assignment at NWAAR, she was not given retroactive credit for her work at NWAAR.  Accordingly, pursuant to 
the
 Handbook, because 
plaintiff
 had earned no credit for two consecutive terms of field instruction, she was subject to dismissal from 
the
 program. 

Pursuant to 
the
 Handbook, a review committee, consisting of 
faculty from 
the
 University, convened at 
the
 University to review 
plaintiff
's situation.  The committee reviewed 
the
 written evaluations of 
plaintiff
's performance at NWAAR and Alexian Brothers, as well as a 12-page written account prepared by 
plaintiff
.  In addition, 
plaintiff
 appeared before 
the
 committee and presented her case.  The committee determined that 
plaintiff
 should be dismissed from 
the
 program.  A letter to that effect was sent to 
plaintiff
 on March 3, 1999.

In accordance with 
the
 Handbook, 
plaintiff
 appealed 
the
 decision of 
the
 student review committee to Dean Sandra Alcorn.  Dean Alcorn reviewed materials prepared by 
plaintiff
.  In her submission to Dean Alcorn, 
plaintiff
 added four new pages to 
the
 materials that she had provided to 
the
 review committee.  Dean Alcorn then met with 
plaintiff
.  After considering 
plaintiff
's appeal, she found that 
plaintiff
 had not been subjected to capricious grading in her field work assignments and that there was no reason to change her grades or reverse 
the
 decision of 
the
 review committee.  Dean Alcorn upheld 
the
 decision of 
the
 review committee and informed 
plaintiff
 of her decision by letter.  Although 
entitled, 
plaintiff
 did not appeal Dean Alcorn's decision.

At trial, plaintiff testified that she received 
the
 Field Instruction 
Manual and 
the
 Handbook when she started classes at 
the
 University and was familiar with the contents
.  In particular, section X 
of 
the
 Field Instruction Manual provides that, when a field instructor assesses a student's performance as unsatisfactory, a joint conference with 
the
 faculty liaison, 
the
 field instructor, and 
the
 student
 should be held to develop a written "follow-up" plan to address 
the
 unsatisfactory performance.  Field instructors should document all verbal warnings and must notify 
the
 student and 
the
 faculty field liaison in writing if 
the
 student's performance is not improving sufficiently to warrant a "PASS" grade within sufficient time so that 
the
 student
 can respond to and have 
the
 opportunity to correct any deficiencies in her performance.  Section XX states that 
the
 University provides a faculty advisor to explain 
the
 University's policies to 
the
 field instructors, maintain close contact with 
the
 field instructors, review all evaluations submitted by 
the
 field instructors, and keep 
the
 academic advisors advised of a student's problems.

Plaintiff testified that in October 1998, she complained to Dr. Fred McKenzie, her faculty liaison, about 
the
 inadequate supervision and instruction she received from her supervisors at Alexian Brothers.  At Dr. McKenzie's suggestion, she told her supervisors at Alexian Brothers several times that she needed more supervision.
  Plaintiff stated that no one complained about her performance or warned her that she was in danger of failing.

Dr. Susan Ross, 
the
 field placement coordinator, testified that section X of 
the
 Field Instruction Manual was in full force and effect while 
plaintiff
 attended 
the
 University.  She admitted that she had never seen any proof or documentation of section X compliance at either of 
plaintiff
's field placements.  Dr. Ross further admitted that she never saw a written remediation plan for 
the
 Alexian Brothers field placement.

T
he
 trial court found 
that 
the
 University and 
plaintiff
 entered into an implied agreement whereby 
the
 University agreed to deliver, among other things, a degree in social work if 
plaintiff
 achieved satisfactory grades.  The trial court further found that 
plaintiff
 did not achieve 
the
 requisite satisfactory grades due to her failure to successfully complete 
the
 field instruction component of 
the
 curriculum and that 
the
 court was "not authorized to intervene in 
the
 
defendant
's grading function absent a finding of bad faith which, beyond mere suspicion, 
the
 evidence adduced does not support."  This statement suggests that 
the
 
trial court found that 
the
 University did not act in bad faith.  In any event, 
the
 trial court did not find expressly
 whether 
the
 University's faculty or agents 
acted arbitrarily, capriciously, or in bad faith in dismissing 
plaintiff
 from 
the
 program.

The trial court further found that 
section XX of 
the
 Field Instruction Manual
 imposed other requirements that 
the
 University did not perform.  In particular, 
the
 trial court noted that 
the
 evidence showed that 
the
 University failed to provide the following services in a meaningful way so as to permit 
plaintiff
 
the
 opportunity to successfully complete 
the
 field instruction portion of 
the
 curriculum
:  provide a faculty advisor to explain 
the
 University's policies to 
the
 field instructors; maintain close contact with 
the
 field instructors; review all evaluations submitted by 
the
 field instructors; and keep 
the
 academic advisors advised of 
plaintiff
's problems.  

Additionally, 
the
 trial court found that 
the
 evidence showed that 
the
 University substantially failed to fulfill 
the
 requirements of section X
 of 
the
 Field Instruction Manual by failing to hold a 
joint conference with 
the
 faculty liaison, 
the
 field instructor, and 
plaintiff
 to develop 
the
 written remediation plan so that 
plaintiff
 could respond to and have 
the
 opportunity to correct any deficiencies in her performance.  The court also noted that there was no evidence of a written remediation plan.  
Accordingly, 
the
 trial court held that 
the
 University breached the agreement and granted judgment in favor of 
plaintiff
 in 
the
 amount of $31,469, 
the
 full refund of her tuition
.  Plaintiff did not seek reinstatement.  The 
University timely appeals.
 

The 
University contends that 
the
 trial court applied 
the
 wrong standard of law to 
plaintiff
's breach of contract claim against 
the
 University for dismissing 
plaintiff
.
  We agree.  On appeal, 
the
 parties do not dispute 
the
 factual findings, only 
the
 application of 
the
 law to 
the
 facts.
  The question of whether 
the
 trial court applied 
the
 wrong legal standard is one of law, which we review 
de
 
novo
.  
Illinois Bell Telephone Co. v. Illinois Commerce Comm'n
, 327 
Ill. App. 3d
 768, 775 (2002).

It is true that a college or university and its students have a contractual relationship, and 
the
 terms of 
the
 contract are generally set forth in 
the
 school's catalogs and bulletins (see 
Frederick v. Northwestern University Dental School
, 247 
Ill. App. 3d
 464, 471 (1993)).  However, 
the
 relationship between a student and a private university is unique and cannot be strictly categorized or characterized in purely contractual terms.  See 
Bilut v. Northwestern University
, 269 
Ill. App. 3d 
 125, 133 (1994).  Moreover, 
courts are reluctant to interfere with 
the
 academic affairs and regulation of student conduct in a private university setting (see 
Holert v. University of Chicago
, 751 F. Supp. 1294, 1301 (N.D. Ill. 1990)).  T
herefore, in 
the
 
student-university context
, a student may have a remedy for breach of contract when it is
 alleged that an 
adverse academic decision
 has been made concerning 
the
 student but 
only
 if that decision was made 
arbitrarily, capriciously, or in bad faith
.  See 
Frederick
, 247 
Ill. App. 3d
 at 471.

The burden of establishing arbitrary or capricious conduct is a heavy one.  
Frederick
, 247 
Ill. App. 3d
 at 471.  The 
plaintiff
 must show that her dismissal was "without any discernible rational basis."  
 
Holert
, 751 F. Supp. at 1301.  
In other words, a court may not override 
the
 academic decision of a university "unless it is such a substantial departure from accepted academic norms as to demonstrate that 
the
 person or committee responsible did not actually exercise professional judgment."  
Regents of the University of Michigan v. Ewing
, 474 U.S. 214, 225, 88 L. Ed. 2d 523, 532, 106 S. Ct. 507, 513 (1985).

In this case, 
the
 trial court did not conclude that any of 
the
 University's faculty or agents acted arbitrarily, capriciously, or in bad faith.  Nor did 
the
 trial court find that 
the
 decision to dismiss 
plaintiff
 was made without "any discernable rational basis."  See 
Frederick
, 247 
Ill. App. 3d
 at 471-72.  Rather, to 
the
 contrary, 
the
 trial court found that 
the
 evidence did not support a finding of bad faith by 
the
 U
niversity
.  This finding is insufficient to support a judgment against 
the
 University, as recovery for a dismissal in 
the
 student-university context is permitted only when "an adverse decision concerning 
the
 student, supposedly for academic deficiencies, was made arbitrarily and capriciously and in bad faith."  
Wilson v. Illinois Benedictine College
, 112 
Ill. App. 3d 
932, 937 (1983).

Plaintiff argues that 
the
 University misconstrues 
the
 trial court's order.  Plaintiff contends that the order states that 
plaintiff
 did not sustain her burden of proof only with regard to her grade performance evaluations and
 
that the
 trial court made no finding of bad faith with respect to 
the
 failure of 
the
 University to comply with sections X and XX of 
the
 Field Instruction Manual.  
Although 
plaintiff
 cites 
the
 absence of certain findings as justification for an affirmance, she fails to recognize that she has 
the
 burden of proof to show that 
the
 University acted with
 "no discernable rational basis" in 
dismissing her.  

Plaintiff argues that 
the
 University's breach of 
the
 Field Instruction Manual constituted 
per
 
se
 arbitrary and capricious conduct.
  
We cannot sanction such an argument.  If we did, any 
failure by a university to comply with 
the
 
terms set forth in 
the
 university
's catalogs or manuals
 would amount to 
per
 
se
 arbitrary and capricious conduct.  
See 
Brody v. Finch University of Health Sciences/The Chicago Medical School
, 298 
Ill. App. 3d
 146, 156 (1998)
.  

Nevertheless,
 
plaintiff argues that the evidence establishes that the University had no discernable rational basis to dismiss her from the program.  In support of her contention, plaintiff points to the evidence showing, 
inter
 
alia
, that the University failed to adequately document the deficiencies in her performance; failed to adequately warn her of her alleged deficiencies; and failed to advise her of these deficiencies during meetings with required University personnel.  These alleged violations of the Field Instruction Manual do not amount to arbitrary, capricious, or bad-faith conduct on the part of the University's faculty or agents.

What would make the University liable for breach of contract in the student-university setting is not that the University exercised its academic judgment unwisely, by allegedly failing to properly comply with the Field Instruction Manual, but that it did not exercise its academic judgment at all, instead acting arbitrarily or in bad faith in its treatment of plaintiff.  See 
Regents of the University of Michigan
, 474 U.S. at 225, 88 L. Ed. 2d at 532, 106 S. Ct. at 513.  This is not a case in which the University withheld admission (
Steinberg v. Chicago Medical School
, 69 Ill. 2d 320 (1977)) or a degree (
DeMarco v. University of Health Sciences/The Chicago Medical School
, 40 Ill. App. 3d  474 (1976)) because of a student's refusal to contribute to the school.  Nor is this a situation where the university reneged on a promise of admission if certain requisites were met (
Brody
, 298 Ill. App. 3d 146).  In short, there is no evidence of arbitrary, capricious, or bad-faith conduct toward plaintiff in dismissing her from the program.  The evidence reveals that plaintiff's failures were well documented and the faculty and plaintiff's supervisors were concerned with allowing plaintiff to continue working in a setting in which she would have to interact with clients.  The University's faculty and agents ultimately exercised their academic judgment and dismissed plaintiff.  We note that plaintiff never pleaded that the University's faculty or agents treated her arbitrarily, capriciously, or in bad faith, and plaintiff has failed to meet her burden of proof. 

In sum, the trial court's findings of fact do not support its legal conclusion.  Accordingly, we must reverse the judgment.

Based on the foregoing, the judgment of the circuit court of Kane County is reversed.

Reversed.

GROMETER and CALLUM, JJ., concur.