BETTY RAETHZ, Plaintiff-Appellee, v. AURORA UNIVERSITY, Defendant-Appellant.

Second District   No. 2—02—1388

Opinion filed February 27, 2004.

Frederic J. Artwick and Michael C. Andolina, both of Sidley, Austin, Brown & Wood, of Chicago, for appellant.

Steven E. Glink, of Northbrook, for appellee.

JUSTICE BYRNE delivered the opinion of the court:
Plaintiff, Betty Raethz, a student, filed a four-count complaint

against defendant, Aurora University, for damages based on her allegedly wrongful expulsion from the school's master's in social work program. The trial court granted the University summary judgment as to count IV and, following a bench trial, found for the University as to counts I and III. As to count II, the only count at issue on appeal, the trial court held that the University breached an agreement created by the University's School of Social Work Handbook (Handbook) and the Field Instruction Manual, and granted judgment to plaintiff for $31,469. We reverse because the trial court misapplied the law, which required a finding that the dismissal was based on arbitrary, capricious, or bad-faith conduct.

Plaintiff enrolled in the program in the fall quarter of 1997. According to the Handbook, a student must successfully complete 60 credits to receive a master's degree; 18 credits must be earned through successful completion of field instruction. While field instructors complete evaluations based on a student's performance at an agency, the University is ultimately responsible for assigning a grade for fieldwork. Under the terms of the Handbook, "[t]wo consecutive terms of below standard work resulting in a 'no credit' grade in Field Instruction is cause for dismissal from the MSW Program."

Plaintiff chose three fieldwork assignments. For her first assignment, plaintiff worked at the Hospice of Northeastern Illinois. Plaintiff received credit for this field instruction work. Next, she chose Northwest Action Against Rape (NWAAR). Ultimately, plaintiff's supervisors could not recommend that plaintiff receive a passing grade for her fieldwork at NWAAR. However, she was not given a failing grade; instead she was given a deferred grade, an "X," which according to the Handbook is to be used when a course is not completed. Plaintiff chose to do her third fieldwork assignment at Alexian Brothers Behavioral Health Hospital. That assignment also did not fare well. On January 26, 1999, Alexian Brothers decided to terminate plaintiff's placement due to her performance, and she received "No Credit" for her fieldwork.

Because plaintiff received no credit for her fall 1998 fieldwork assignment at Alexian Brothers, she was given a letter grade of "F" by the University for that class. Because she failed to fulfill the requirements of a remediation plan and a learning agreement, which were developed after her assignment at NWAAR, she was not given retroactive credit for her work at NWAAR. Accordingly, pursuant to the Handbook, because plaintiff had earned no credit for two consecutive terms of field instruction, she was subject to dismissal from the program.

Pursuant to the Handbook, a review committee, consisting of

faculty from the University, convened at the University to review plaintiff's situation. The committee reviewed the written evaluations of plaintiff's performance at NWAAR and Alexian Brothers, as well as a 12-page written account prepared by plaintiff. In addition, plaintiff appeared before the committee and presented her case. The committee determined that plaintiff should be dismissed from the program. A letter to that effect was sent to plaintiff on March 3, 1999.

In accordance with the Handbook, plaintiff appealed the decision of the student review committee to Dean Sandra Alcorn. Dean Alcorn reviewed materials prepared by plaintiff. In her submission to Dean Alcorn, plaintiff added four new pages to the materials that she had provided to the review committee. Dean Alcorn then met with plaintiff. After considering plaintiff's appeal, she found that plaintiff had not been subjected to capricious grading in her fieldwork assignments and that there was no reason to change her grades or reverse the decision of the review committee. Dean Alcorn upheld the decision of the review committee and informed plaintiff of her decision by letter. Although entitled, plaintiff did not appeal Dean Alcorn's decision.

At trial, plaintiff testified that she received the Field Instruction Manual and the Handbook when she started classes at the University and was familiar with the contents. In particular, section X of the Field Instruction Manual provides that, when a field instructor assesses a student's performance as unsatisfactory, a joint conference with the faculty liaison, the field instructor, and the student should be held to develop a written "follow-up" plan to address the unsatisfactory performance. Field instructors should document all verbal warnings and must notify the student and the faculty field liaison in writing if the student's performance is not improving sufficiently to warrant a "PASS" grade within sufficient time so that the student can respond to and have the opportunity to correct any deficiencies in her performance. Section XX states that the University provides a faculty advisor to explain the University's policies to the field instructors, maintain close contact with the field instructors, review all evaluations submitted by the field instructors, and keep the academic advisors advised of a student's problems.

Plaintiff testified that in October 1998, she complained to Dr. Fred McKenzie, her faculty liaison, about the inadequate supervision and instruction she received from her supervisors at Alexian Brothers. At Dr. McKenzie's suggestion, she told her supervisors at Alexian Brothers several times that she needed more supervision. Plaintiff stated that no one complained about her performance or warned her that she was in danger of failing.

Dr. Susan Ross, the field placement coordinator, testified that sec-

tion X of the Field Instruction Manual was in full force and effect while plaintiff attended the University. She admitted that she had never seen any proof or documentation of section X compliance at either of plaintiff's field placements. Dr. Ross further admitted that she never saw a written remediation plan for the Alexian Brothers field placement.

The trial court found that the University and plaintiff entered into an implied agreement whereby the University agreed to deliver, among other things, a degree in social work if plaintiff achieved satisfactory grades. The trial court further found that plaintiff did not achieve the requisite satisfactory grades due to her failure to success-fully complete the field instruction component of the curriculum and that the court was "not authorized to intervene in the defendant's grading function absent a finding of bad faith which, beyond mere suspicion, the evidence adduced does not support." This statement suggests that the trial court found that the University did not act in bad faith. In any event, the trial court did not find expressly whether the University's faculty or agents acted arbitrarily, capriciously, or in bad faith in dismissing plaintiff from the program.

The trial court further found that section XX of the Field Instruc-tion Manual imposed other requirements that the University did not perform. In particular, the trial court noted that the evidence showed that the University failed to provide the following services in a meaningful way so as to permit plaintiff the opportunity to success-fully complete the field instruction portion of the curriculum: provide a faculty advisor to explain the University's policies to the field instruc-tors; maintain close contact with the field instructors; review all evalu-ations submitted by the field instructors; and keep the academic advi-sors advised of plaintiff's problems.

Additionally, the trial court found that the evidence showed that the University substantially failed to fulfill the requirements of sec-tion X of the Field Instruction Manual by failing to hold a joint confer-ence with the faculty liaison, the field instructor, and plaintiff to develop the written remediation plan so that plaintiff could respond to and have the opportunity to correct any deficiencies in her perfor-mance. The court also noted that there was no evidence of a written remediation plan. Accordingly, the trial court held that the University breached the agreement and granted judgment in favor of plaintiff in the amount of $31,469, the full refund of her tuition. Plaintiff did not seek reinstatement. The University timely appeals.

■ The University contends that the trial court applied the wrong standard of law to plaintiff's breach of contract claim against the University for dismissing plaintiff. We agree. On appeal, the parties do

not dispute the factual findings, only the application of the law to the facts. The question of whether the trial court applied the wrong legal standard is one of law, which we review *de novo*. *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 327 Ill. App. 3d 768, 775 (2002).

■ It is true that a college or university and its students have a contractual relationship, and the terms of the contract are generally set forth in the school's catalogs and bulletins (see *Frederick v. Northwestern University Dental School*, 247 Ill. App. 3d 464, 471 (1993)). However, the relationship between a student and a private university is unique and cannot be strictly categorized or characterized in purely contractual terms. See *Bilut v. Northwestern University*, 269 Ill. App. 3d 125, 133 (1994). Moreover, courts are reluctant to interfere with the academic affairs and regulation of student conduct in a private university setting (see *Holert v. University of Chicago*, 751 F. Supp. 1294, 1301 (N.D. Ill. 1990)). Therefore, in the student-university context, a student may have a remedy for breach of contract when it is alleged that an adverse academic decision has been made concerning the student but *only* if that decision was made *arbitrarily, capriciously, or in bad faith*. See *Frederick*, 247 Ill. App. 3d at 471.

■ The burden of establishing arbitrary or capricious conduct is a heavy one. *Frederick*, 247 Ill. App. 3d at 471. The plaintiff must show that her dismissal was "without any discernible rational basis." *Holert*, 751 F. Supp. at 1301. In other words, a court may not override the academic decision of a university "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225, 88 L. Ed. 2d 523, 532, 106 S. Ct. 507, 513 (1985).

In this case, the trial court did not conclude that any of the University's faculty or agents acted arbitrarily, capriciously, or in bad faith. Nor did the trial court find that the decision to dismiss plaintiff was made without "any discernable rational basis." See *Frederick*, 247 Ill. App. 3d at 471-72. Rather, to the contrary, the trial court found that the evidence did not support a finding of bad faith by the University. This finding is insufficient to support a judgment against the University, as recovery for a dismissal in the student-university context is permitted only when "an adverse decision concerning the student, supposedly for academic deficiencies, was made arbitrarily and capriciously and in bad faith." *Wilson v. Illinois Benedictine College*, 112 Ill. App. 3d 932, 937 (1983).

Plaintiff argues that the University misconstrues the trial court's order. Plaintiff contends that the order states that plaintiff did not sustain her burden of proof only with regard to her grade performance

evaluations and that the trial court made no finding of bad faith with respect to the failure of the University to comply with sections X and XX of the Field Instruction Manual. Although plaintiff cites the absence of certain findings as justification for an affirmance, she fails to recognize that she has the burden of proof to show that the University acted with "no discernable rational basis" in dismissing her.

Plaintiff argues that the University's breach of the Field Instruction Manual constituted *per se* arbitrary and capricious conduct. We cannot sanction such an argument. If we did, any failure by a university to comply with the terms set forth in the university's catalogs or manuals would amount to *per se* arbitrary and capricious conduct. See *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146, 156 (1998).

Nevertheless, plaintiff argues that the evidence establishes that the University had no discernable rational basis to dismiss her from the program. In support of her contention, plaintiff points to the evidence showing, *inter alia*, that the University failed to adequately document the deficiencies in her performance; failed to adequately warn her of her alleged deficiencies; and failed to advise her of these deficiencies during meetings with required University personnel. These alleged violations of the Field Instruction Manual do not amount to arbitrary, capricious, or bad-faith conduct on the part of the University's faculty or agents.

■ What would make the University liable for breach of contract in the student-university setting is not that the University exercised its academic judgment unwisely, by allegedly failing to properly comply with the Field Instruction Manual, but that it did not exercise its academic judgment at all, instead acting arbitrarily or in bad faith in its treatment of plaintiff. See *Regents of the University of Michigan*, 474 U.S. at 225, 88 L. Ed. 2d at 532, 106 S. Ct. at 513. This is not a case in which the University withheld admission (*Steinberg v. Chicago Medical School*, 69 Ill. 2d 320 (1977)) or a degree (*DeMarco v. University of Health Sciences/The Chicago Medical School*, 40 Ill. App. 3d 474 (1976)) because of a student's refusal to contribute to the school. Nor is this a situation where the university reneged on a promise of admission if certain requisites were met (*Brody*, 298 Ill. App. 3d 146). In short, there is no evidence of arbitrary, capricious, or bad-faith conduct toward plaintiff in dismissing her from the program. The evidence reveals that plaintiff's failures were well documented and the faculty and plaintiff's supervisors were concerned with allowing plaintiff to continue working in a setting in which she would have to interact with clients. The University's faculty and agents ultimately

exercised their academic judgment and dismissed plaintiff. We note that plaintiff never pleaded that the University's faculty or agents treated her arbitrarily, capriciously, or in bad faith, and plaintiff has failed to meet her burden of proof.

In sum, the trial court's findings of fact do not support its legal conclusion. Accordingly, we must reverse the judgment.

Based on the foregoing, the judgment of the circuit court of Kane County is reversed.

Reversed.

GROMETER and CALLUM, JJ., concur.