In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1869

JOHN DOE,

*Plaintiff-Appellant*,

*v.*

COLUMBIA COLLEGE CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 00748 — **Amy J. St. Eve**, *Judge.*

ARGUED APRIL 10, 2019 — DECIDED AUGUST 13, 2019

Before BAUER, MANION, and ROVNER, *Circuit Judges*.

BAUER, *Circuit Judge.* This case arises out of a sexual assault investigation and disciplinary hearing conducted by Columbia College of Chicago ("Columbia"). Jane Roe accused John Doe of sexual assault after the two engaged in what she says were non-consensual sexual relations. Doe was given multiple opportunities to submit exculpatory evidence to Columbia,

and after the investigation was complete, Doe was given multiple opportunities to review the investigative materials and the evidence submitted by Roe. After a formal disciplinary hearing a panel weighed the evidence, found that some of Roe's allegations were proven by a preponderance of the evidence, and that some were not. Doe was then suspended from Columbia for an academic year.

Doe filed a complaint in federal court alleging Roe and Columbia violated 20 U.S.C. § 1681 ("Title IX"), breach of contract, promissory estoppel, negligent infliction of emotional distress, intentional infliction of emotional distress, and negligence. The district court ruled that each claim was defective and granted the defendants' motion to dismiss. Because we agree with the well reasoned and thorough opinion of the district court, we affirm.

## I. BACKGROUND

Jane Roe and John Doe attended Columbia and had a sexual encounter on December 11, 2015. In February 2016, Roe filed a complaint with Columbia alleging she had not consented to the encounter. Columbia appointed staff member Sarah Shaaban to investigate the matter. She met with Doe on February 3, 2016, to discuss the allegations and provide him with an opportunity to submit whatever evidence he wished. At this time Doe did not provide any exculpatory evidence.

Columbia's Title IX coordinator, Dr. Beverly Anderson, reviewed the investigative report and notified Doe that there was sufficient evidence for a reasonable hearing panel to conclude that Doe had violated the school's sexual misconduct policy. She informed Doe that he would be given written

notification of the date, time, and place of the hearing, the names of the hearing officers, and that he had a right to review investigative materials. Anderson also provided Doe with Columbia's hearing procedures policy.

Doe responded by asserting that the allegations were false and that he had been physically assaulted and verbally harassed by Roe and her friends since the incident. Columbia requested the names of the individuals who committed the acts Doe described in his letter; Doe refused to provide Columbia with any.

Anderson contacted Doe two days later and suggested they meet in person to discuss his concerns, but Doe refused to do so without his attorney being present. Anderson informed Doe that he could bring his attorney. Doe said that two of Roe's friends had "flipped him off" a few days prior. Anderson said she would look into the incident.

The associate vice president for campus safety and security contacted Doe and met with him twice to address his concerns. Campus safety and security was able to identify the student who struck Doe and addressed the issue. Doe was instructed to inform Columbia if he had any other interaction with the student.

On April 19, Anderson provided Doe with a letter addressing each concern that Doe had raised in his March 13 letter. Anderson informed Doe that he and Roe would be provided with the same period of time to review the investigative materials. She reminded Doe that he could submit evidence, but had failed to do so, and that he needed to inform Columbia if he had evidence he intended to present. The letter again

provided Doe with the specific conduct alleged against him and the categories of sexual misconduct that the allegations fell into. The letter also stated that Doe had not provided any evidence of gender discrimination and, if he provided any evidence of discrimination or bias by a Columbia employee connected with the investigation, Columbia would promptly investigate it.

Anderson contacted Doe in early April to provide him with an academic advisor who could approve any accommodations Doe might need. Anderson followed up several times advising Doe that she needed more information before she could approve any accommodation. Doe failed to provide her with this information.

On April 26, Columbia provided Doe with a copy of the information that Roe had submitted regarding the sexual assault. Doe responded in writing to her submission.

On May 6, Anderson informed Doe that Columbia would schedule a hearing and again advised him of the allegations and his procedural rights. Doe reviewed a copy of Roe's submissions and the investigation materials on May 9. Doe then submitted his evidence including screen shots of text messages, his April 25 letter, and a toxicology report that he had paid an expert to prepare. All of this evidence was submitted to the hearing panel.

On May 4, Anderson received a report that Doe and another male student made "kissing noises" at Roe when she was leaving her dorm the night before. Anderson requested that she and Doe speak about the incident. Nothing in the record indicates that Doe was disciplined for this behavior.

The hearing took place on May 23 and the panel found by a preponderance of the evidence that Doe violated Columbia's student sexual misconduct policy and procedures. The panel also found there was insufficient evidence to support two of Roe's allegations. The panel suspended Doe for the 2016–17 academic year.

Doe appealed and Anderson appointed an appeals officer to the case—acting chair of the Cinema Arts and Sciences, Joe Stieff. When Doe discovered that Steiff was involved in a documentary titled "How Will I Tell? Surviving Sexual Assault," he requested Steiff's removal from the case; Columbia replaced Steiff with an appeals officer that Doe found to be unobjectionable, but who ultimately upheld the hearing panel's findings and discipline.

Doe filed a complaint in federal court on January 30, 2017, against Roe and Columbia alleging violations of Title IX and a number of state law claims. The district court granted a motion to dismiss all counts without prejudice and granted Doe's motion for leave to file an amended complaint. On November 7, 2017, Doe filed an amended complaint that was identical in all respects to the original complaint, save the addition of a breach of contract claim against Columbia. Doe explained that he included his previously dismissed claims in the amended complaint to preserve them for appeal and indicated he would not attempt to remedy the deficiencies outlined in the district court's prior ruling.

The district court dismissed Doe's breach of contract claim and now Doe appeals each ruling. Because we agree with the district court, we affirm the dismissal of each of Doe's claims.

## II.  DISCUSSION

We review a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo.* *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). This requires we accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Id.* To survive a motion to dismiss the complaint must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead particularized factual content, not conclusory allegations, that allows the court to plausibly infer the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We may consider documents attached to the pleadings so long as the documents are referred to in the complaint and central to the plaintiff's claims. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Here, plaintiff attached documents to his complaint related to the investigation, hearing, and other issues central to his claims, and the court considered them in deciding the case.

### A.  Title IX Claims

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has interpreted Title IX to provide individual plaintiffs with an implied private right of action to pursue claims of gender discrimination in federal court and has recognized a number of claims that constitute discrimination. *Cannon v. Univ. of*

*Chicago*, 441 U.S. 677, 689 (1979). Doe alleges various discriminatory theories and we will analyze each in turn.

### i. Discrimination

A Title IX discrimination claim requires a plaintiff allege (1) the educational institution received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender. *See Doe v. Purdue University*, 928 F.3d 652, 657 (7th Cir. 2019). The parties do not dispute that Columbia received federal funding, nor that Doe was denied the benefits of an educational program, but rather focus on whether Columbia discriminated against Doe because of his gender. Recently, this Court held that tests or categories labeled "erroneous outcome" or "selective enforcement" or "deliberate indifference" or "archaic assumptions" need not be considered because at bottom they all ask the same question: whether "the alleged facts, if true, raise a plausible inference that the university discriminated … 'on the basis of sex'?" *Id.* at 668–69.

Doe begins with the 2011 "Dear Colleague" letter from the Department of Education that addressed the problem of sexual violence at educational institutions. *See* United States Department of Education, Office of the Assistant Secretary of Civil Rights, Dear Colleague Letter (2011), https:/www2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html. Approximately 20 percent of women and 6 percent of men are victims of completed or attempted sexual assault during college. *Id.* at 2. To address this problem, the letter encouraged schools to publish their discrimination policies, adopt and

publish grievance procedures, ensure their employees are trained to report and effectively respond to incidents of harassment, and appoint a Title IX coordinator. *Id.* at 4. The letter also encouraged schools to apply a preponderance of the evidence standard when adjudicating sexual assault cases. *Id.* at 10–11. Despite the fact that the letter applies equally to male and female students accused of sexual assault, Doe argues that Columbia's attempts to comport with the letter's requirements demonstrate an anti-male bias.

Doe alleges events aimed at raising awareness of sexual assault issues and a screening of "The Hunting Ground," a film about sexual assault, demonstrate an anti-male bias on campus. Doe also points to Columbia sanctioned social media posts titled the "Presence of Yes" which included statements like, "Teach boys that they are not entitled to women's bodies" and "Misogyny kills: the sexual entitlement that many men have and the ways in which they objectify women are behind the high rates of sexual violence, abuse, and harassment that women experience."

Doe asserts that the "Dear Colleague" letter, pressure from the Office of Civil Right investigations, and the aforementioned on-campus programming combined to cause Columbia to implement anti-male policies to increase convictions of male students. This, Doe alleges, was done to avoid additional investigations by the Office of Civil Rights, to avoid losing federal funds, and to avoid negative publicity. A plaintiff cannot rely on these generalized allegations alone, however, but must combine them with facts particular to his case to survive a motion to dismiss. *Purdue*, 928 F.3d at 668; *Baum*, 903 F.3d at 586.

For example, in *Baum*, the court noted that the hearing panel credited witness testimony based on gender—the panel discredited the testimony of all males, including the accused, and credited the testimony of all females, including the victim. *Id.* at 586. In *Doe v. Purdue*, the plaintiff alleged the University found the victim's story credible (without hearing directly from her), and the plaintiff's story incredible. 928 F.3d at 659. The plaintiff was not provided with a copy of the investigative report nor made aware of its contents before his hearing, and the investigation summary failed to include favorable evidence he had submitted to the University. *Id.* at 657. Additionally,

> Two members of the panel candidly stated that they had not read the investigative report. The one who apparently had read it asked John accusatory questions that assumed his guilt. Because John had not seen the evidence, he could not address it. He reiterated his innocence and told the panel about some of the friendly texts that Jane had sent him after the alleged assaults. The panel refused John permission to present witnesses, including character witnesses and a roommate who would state that he was present in the room at the time of the alleged assault and that Jane's rendition of events was false.

*Id.* We found the above allegations made the plaintiff's claim of gender discrimination plausible. But here, Doe does not allege the particularized "something more" that is required to survive a motion to dismiss. Doe was provided with the opportunity to review the investigative materials; was given multiple opportunities to submit evidence; presented affidavits

signed by witnesses; and submitted questions to be asked of Roe on cross-examination.[1] Nor did Doe allege any panel member failed to review the applicable materials or demonstrated bias during the hearing. When Doe did voice concerns about potential bias, Steiff, the appeals officer originally assigned to his case, was removed.

Doe argues that restricting his access to documents relevant to the investigation demonstrated an anti-male bias. First, this allegation is divorced from gender—Doe does not allege that females accused of sexual assault were allowed to review materials or that only female victims were allowed to review them. Second, the documents attached to Doe's complaint show that he accessed the investigative materials and information submitted by Roe multiple times before his hearing.

Doe also argues the board's decision was against the weight of the evidence. Again, this allegation does not imply that the board's decision was based on Doe's gender. Moreover, the documents attached to Doe's complaint do not imply the board blindly accepted Roe's allegations while finding Doe incredible. Rather, after considering all of the evidence the hearing panel found some claims were substantiated and others were not. Doe asserts the toxicology report proved that Roe's assertion that she was incapacitated should have been rejected. But the board did not find that Roe was incapacitated during the sexual encounter; it found that she did not consent to many

---

[1] As appellees note, all parties were able to submit questions for cross-examination, but only the hearing officers were able to ask questions of witnesses. Thus, it was within the discretion of the hearing officers whether to ask questions on cross-examination of either party, regardless of gender.

of the acts performed by Roe. This conclusion is supported by the toxicology report which concluded that Roe likely had limited memory of the events that night due to alcohol induced amnesia.

In sum, there is simply no way to plausibly infer that Columbia's investigation or adjudication was tainted by an anti-male bias. Doe fails to allege particularized facts that could lead to a reasonable inference that Columbia denied him an educational benefit because of his sex.

### ii. Sexual Harassment

Sexual harassment by a fellow student is actionable under Title XI if a plaintiff demonstrates: (1) the harassment was based on sex, (2) it was at an educational institution that was receiving federal funds, (3) the harassment was so severe, pervasive, and objectively offensive that it deprived the victim of access to educational opportunities, and (4) the school officials had actual knowledge of the harassment and were deliberately indifferent to it. *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014). We cannot infer from the allegations that the conduct was based on Doe's gender or that Columbia was deliberately indifferent in light of the circumstances.

Doe alleges the following created a hostile environment based on his gender: he was punched by someone who believed he had raped Roe; a social media post stated "boy[s] like [Doe] are the reason #IneedFeminism"; two social media posts referred to him as a "rapist" and one as a "predator"; and one post indicated that Doe raped someone. However, these acts were directed at Doe not because of his gender, but because the individuals believed he raped someone. Doe

alleges no facts that would cause us to plausibly infer he was harassed because he is a man, rather than because his harassers believed that he raped their friend.

Moreover, Doe does not allege Columbia acted with deliberate indifference. Deliberate indifference is a high bar because "[s]chool administrators must continue to enjoy the flexibility they require in disciplinary decisions unless their response to harassment is clearly unreasonable." *Galster*, 768 F.3d at 619 (quoting *Davis*, 526 U.S. at 643) (internal quotation marks omitted).

When alerted to the above posts, Columbia responded quickly and requested the names of the individuals that made the comments so it could address the issue. When Doe alerted Columbia that one of Roe's friends had "flipped him off," Anderson responded quickly and said she would look into the incident. Additionally, the associate vice president for campus safety and security met with Doe on multiple occasions to ensure his complaints were addressed. Columbia also investigated Doe's claim that he was struck by a student, identified who it was, and addressed the issue while instructing Doe to bring to Columbia's attention if she ever interacted with him again. Doe does not allege that the harassment continued after his initial complaints or that Columbia's response was otherwise deficient. We affirm the district court's dismissal of his peer-harassment claim.

### iii. Retaliation

Doe also alleges that Columbia unlawfully retaliated against him for defending himself against the sexual assault charge and for complaining about Roe and her friends. To

establish a Title IX retaliation claim Doe must show: (1) he engaged in protected activity under Title IX, (2) Columbia took a materially adverse action against him, and (3) there was a but-for causal connection between the two. *Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017).

Doe's first claim of retaliation argues that Columbia suspended Doe for an academic year not because it found he violated the school's sexual harassment policy, but because he attempted to defend himself at his disciplinary proceeding. No facts indicate the panel came to its conclusion because it wanted to punish Doe for defending himself at the proceeding. The complaint and attached exhibits demonstrate that Columbia investigated the complaint, considered the evidence presented by Doe, and concluded that he committed some of the acts that Roe alleged. Doe's discipline was based on this conclusion and nothing indicates otherwise.

Doe's second allegation is that Columbia retaliated against him for complaining about Roe and her friends' behavior by failing to discipline them. There is nothing in Doe's complaint that would allow us to infer that Columbia wanted to retaliate against him for complaining about harassment. Contrary to Doe's argument, his complaint and the attached documents show that Columbia was diligent in investigating his complaints, while nothing Doe alleges leads us to believe that Columbia failed to discipline Roe because they were frustrated that Doe complained about the behavior. This claim was properly dismissed.

### B.  State Law Claims

### i.   Breach of Contract

Doe's primary breach-of-contract argument is that Columbia violated its own policies and procedures by failing to provide him with an impartial investigation and adjudication. Doe asserts that he was not provided with access to the documents related to his hearing, that Columbia failed to discipline female individuals who engaged in similar conduct, and that the hearing panel's decision was against the weight of the evidence.

A breach of contract claim requires Doe allege: (1) the existence of a valid and enforceable contractual promise, (2) a breach of that promise, (3) plaintiff performed his contractual obligations, and (4) resultant damages. *Dual-Temp of Illinois, Inc. v. Hench Control, Inc.*, 821 F.3d 866, 869 (7th Cir. 2016). A college and its students have a contractual relationship and its terms are set forth in the school's catalogues and bulletins. *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699 (Ill. App. Ct . 2004). Illinois courts have expressed a reluctance to interfere with academic affairs and have held that a student's breach of contract claim must involve decisions that were arbitrary, capricious, or made in bad faith. *Id.* Columbia would not be liable even if we find it exercised its academic judgment unwisely; rather it must have disciplined a student without any rational basis. *Frederick v. Northwestern Univ. Dental School*, 617 N.E.2d 382, 387 (Ill. App. Ct. 1993).

The assertion that Doe was not allowed to review investigative materials is contradicted by the documents attached to his complaint. Nor was Columbia arbitrary or capricious in its

response to Doe's complaints about female students. They responded quickly, investigated, and handled his complaints, and encouraged Doe to inform them if any further incidents occurred. Finally, nothing indicates that the investigation or the decision by the hearing panel was arbitrary. Quite the contrary, after a thorough investigation the hearing panel determined that some allegations were established and others were not.

The burden on Doe is high. To find in his favor we must find that Columbia "did not exercise its academic judgment at all, instead acting arbitrarily or in bad faith in its treatment of plaintiff." *Raethz*, 805 N.E.2d at 700. Because the record does not support a plausible inference that Columbia was biased against Doe, we affirm the district court's dismissal of Doe's breach of contract claim.

### ii.  Remainder of Doe's State Law Claims

Doe's arguments related to the remainder of his state law claims are cryptic and undeveloped and we hold he has waived these claims. Without the facts or the law necessary to rule on these issues, we will not attempt to piece together an argument for Doe or guess as to what he meant to argue in his brief. Instead, we uphold the dismissal by the district court.

### III.  CONCLUSION

The rulings of the district court and its final order are AFFIRMED.