NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 16, 2020
Decided November 20, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-1165

| | |
|---|---|
| TREVOR JOHNSON, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 2:19-cv-388 |
| MARIAN UNIVERSITY, *Defendant-Appellee.* | J.P. Stadtmueller, *Judge.* |

**O R D E R**

This is a Title IX sex discrimination case. Plaintiff Trevor Johnson, a male student at Marian University, met "Jane Roe" during their freshman year. Johnson and Roe drank at a party one night in September 2017, went back to Roe's room, and had sex. The next morning, Roe could not remember having intercourse.

A year later, Roe accused Johnson of taking advantage of her in her inebriated, blackout state. Johnson claimed the sex was consensual. Marian's Title IX officials,

including dean of students Dr. Paul Krikau, investigated Roe's complaint and found Johnson responsible. Johnson received a two-year suspension from the school.

Johnson sued Marian, claiming it discriminated against him because of his sex in concluding he was at fault. The district court granted summary judgment for Marian and Johnson appeals. We review summary judgment *de novo*, asking whether a genuine dispute exists over any material fact. *Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1102 (7th Cir. 2019).

A Title IX discrimination claim requires proof that (1) the educational institution received federal funding, (2) the plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against the plaintiff based on gender. *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019). The first two elements are not at issue. This case boils down to whether Marian discriminated against Johnson "on the basis of his sex." That is the test. *Id.* at 854–55; *Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019).

The record does not permit a finding of sex discrimination here. Johnson leans on an alleged anti-male, pro-feminist culture at Marian fueled by politics and current events. In particular, he cites the Department of Education's 2011 "Dear Colleague" letter, which pressured universities to prioritize resolving campus sexual assault cases or else lose federal funding. For Marian, the potential loss of federal funds was more than abstract in light of a recent investigation by the Office of Civil Rights—a sub-agency of the Department of Education—into its handling of sexual assault complaints. Johnson also notes Marian's Title IX training educated administrators on the #MeToo movement's impacts. And he highlights campus sexual assault awareness events that featured accounts of mostly female accusers. All of this, Johnson claims, conditioned Marian's Title IX administrators to favor female complainants and discriminate on the basis of sex.

We have acknowledged this sort of background can be relevant for assessing Title IX sex discrimination claims. *See Columbia Coll.*, 933 F.3d at 855 (considering campus events "aimed at raising awareness of sexual assault issues"); *Purdue*, 928 F.3d at 668–69 (recognizing Dear Colleague letter and recent OCR investigations of school as relevant). But a plaintiff cannot rely on such generalized information alone; he must combine it with facts creating an inference that, in *his specific case*, the institution treated him differently because of his sex. *Columbia Coll.*, 933 F.3d at 855 (citing *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018)). And although our decisions in *Columbia College* and *Purdue*

examined the issue through the pleadings lens, this requirement does not dissipate at summary judgment.

Johnson tries to prove this connection by referencing statements Dr. Krikau made while conducting Roe's initial interview. In a few places, Dr. Krikau noted that the events as described by Roe amounted to violations of university policy. From these statements, Johnson infers Dr. Krikau jumped to conclusions and determined Johnson's guilt based on Roe's first impression and report alone. But even were that an accurate reading of the interview transcript, Dr. Krikau's statements reveal no sex-based bias. Nothing suggests he believed Roe's account simply because she was a female; his comments were "divorced from gender." *Columbia Coll.*, 933 F.3d at 856. At most, they demonstrate a pro-victim bias, but both women and men can be victims of sexual assault.

Johnson also points to several posts from Dr. Krikau's personal Twitter account as evidence of anti-male bias. Around the time of Johnson's investigation, Dr. Krikau endorsed Dr. Christine Blasey Ford as a hero for accusing now-Justice Kavanaugh of sexual misconduct. He also defended a woman who complained of having to be selective about reporting harassment. These posts have no connection to Johnson's case. They do not call into question Dr. Krikau's ability to review Roe's allegations objectively.

These facts do not rise to the level of those alleged in *Purdue*. In that case, like here, a male college student sued his school for sex discrimination after being found responsible for a non-consensual sexual encounter with a female student. We reversed dismissal of plaintiff's Title IX claim because he plausibly alleged the school's adjudicators credited the female accuser over him based on sex. The accuser provided neither written nor oral account. Her story was summarized through a letter crafted by the director of a campus victim support center—the same organization that, within a month of plaintiff's discipline, promoted a *Washington Post* article titled, "Alcohol isn't the cause of campus sexual assault. *Men are*." 928 F.3d at 669–70 (emphasis added). And two of the three administrators on the disciplinary panel admitted they took no evidence into account other than the female student's accusations as described in that letter. *Id.* at 669. These allegations created an inference of gender bias. Dr. Krikau's interview statements and unrelated social media musings, on the other hand, do not.

We often call summary judgment the "put up or shut up" stage of litigation. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). But the record here leaves nothing for the jury to decide. Dr. Krikau's interview statements reveal no gender bias. Nor does his personal social media activity cast doubt on his review of Johnson's case. Johnson is left with general allegations about the school administration's perceived anti-male culture. That is not enough to create a triable issue on sex discrimination, so we AFFIRM summary judgment for Marian University.