In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 23-2940

NICHOLAS GASH,

*Plaintiff-Appellant,*

*v.*

ROSALIND FRANKLIN UNIVERSITY, *et al.*,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:23-cv-02054 — **Elaine E. Bucklo**, *Judge.*

———————

ARGUED APRIL 18, 2024 — DECIDED SEPTEMBER 24, 2024

———————

Before SYKES, *Chief Judge*, and BRENNAN and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge*. Rosalind Franklin University investigated and disciplined a student for alleged sexual assault of another student. While doing so the university committed numerous errors. The accused student sued, contending that the errors were evidence of sex-based discrimination by the university that violated federal Title IX and Illinois law. The

district court found that the errors were not sex-based and dismissed the claims. We affirm.

**I**

Nicholas Gash and Jane Roe attended Rosalind Franklin University, a private school in Chicago that receives federal funds. In November 2021, while students at the university, Gash and a group of friends went to Roe's off-campus apartment. There Gash participated in a drinking game and consumed alcoholic beverages. The group then went to a bar where Gash imbibed more and became heavily intoxicated. One witness observed that Gash "seemed a lot more intoxicated than Roe[,]" and another witness described never having seen Gash "as drunk as she had seen him at the bar." While at the bar, Gash also ingested marijuana.

Due to his intoxication, Gash had no memory of the evening after leaving the bar. He next recalls waking up the following morning on Roe's couch fully dressed. He left Roe's apartment and later received a text from Roe asking if he arrived home safely.

About a week later, Roe texted Gash to ask if they could meet in person to talk. They met the next day and Roe accused Gash of sexual assault. Shocked by the accusation, Gash responded that he had no memory of the alleged assault due to his state of intoxication.

In March 2022, Roe reported the event to the university. A university official notified Gash that Roe had filed a complaint against him under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681–88. Gash received a First Notice of Allegations that contained no details about the conduct at issue or the policies Gash allegedly violated. Believing

the notice was improper, Gash emailed the university, and the Director of Title IX Compliance and Equity sent Gash a Second Notice of Allegations which described the alleged sexual assault.

The university interviewed Roe on March 31, 2022, and Gash was interviewed over a month later. One week after Gash's interview, the investigator issued a six-page report summarizing the testimony of the parties and six witnesses, as well as her findings.

On May 16, 2022, Gash initiated the process to withdraw from the university. He obtained approval for withdrawal from his educational program, which was then sent to the dean of the public health college for further approval. Three days after starting the withdrawal process, Gash received email confirmation from the registrar's office that his change in student status had been approved. A day prior, the university's Title IX director had sent Gash an email which read: "I noticed that you have withdrawn from the university. Do you still plan on participating in the Title IX Hearing?" On May 20, 2022, Gash responded he did not and stated: "Pursuant to the University's Policy once I, as the Respondent, am no longer enrolled at the University, the application of the policy is discontinued. Please confirm for me the University's position on this written policy and the dismissal of this matter."

Gash followed up repeatedly with the university, seeking to confirm with the registrar's office and the Title IX director that because he understood his withdrawal was effective, the university would honor its policy and discontinue and/or dismiss the Title IX matter. One week later the director responded: "It seems your withdrawal status has not been approved and a hold has been placed on your account and

registration, making you a current student at [the university]. As you are still a student at [the university], the Title IX hearing will proceed."

Absent an official withdrawal, Gash remained a student, and the university sent Gash a Notice of Hearing and Final Investigative Report and Right to File Response. Four days later the university issued a Corrected Final Investigative Report with the proper names of the parties and the complaint date.

The university then held a virtual hearing. Gash and Roe were removed from the Zoom call when witnesses testified. When Gash was interviewed, the panel questioned him extensively. But when interviewing Roe, the panel asked her only one question, "[D]id you give consent?" The panel also interrupted Gash's advisor during cross-examination, deemed irrelevant material Gash's advisor sought to discuss, cut short some questioning by Gash's advisor, and answered questions posed by Gash's advisor to Roe on behalf of Roe.

After the hearing a letter was issued notifying Gash that the panel found him responsible for violating the university's Title IX policy and that he was being sanctioned with expulsion. Gash and his advisor requested transcripts of the hearing and the recorded prehearing conference, at which Gash said the director reprimanded him before the hearing panel. He wanted these documents for his appeal, hoping to establish the director's bias. The university denied Gash a copy of the pre-hearing conference transcript.

Gash appealed the university's finding and sanction, which the university denied. He then sued the university alleging, as relevant for this appeal, violations of Title IX and

Illinois contract law. The university and other defendants moved to dismiss for failure to state a claim. Gash then amended his complaint.

The district court dismissed Gash's amended complaint with prejudice. On the Title IX claim, the district court found that "[h]owever unfair plaintiff may perceive the university's approach, the process he describes does not suggest that it discriminated against him based on his sex." Gash conceded the state law contract claims should be dismissed against all individual defendants, but not against the university. For the contract claims, the court cited *Doe v. Columbia Coll. Chi.*, 933 F.3d 849 (7th Cir. 2019), noting the "high" burden to show that the university "did not exercise its academic judgment at all." The court found that Gash did not satisfy that burden. Gash appeals the district court's rulings.

## II

We review de novo the district court's decision to dismiss Gash's complaint. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). We "accept well-pleaded facts as true" and we "draw all inferences in [Gash's] favor." *Id.* A complaint must be supported by allegations that, when taken as true, plausibly suggest entitlement to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). On appeal Gash challenges the dismissal of his Title IX and Illinois breach of contract claims.

## A

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal

financial assistance." 20 U.S.C. § 1681(a). It is undisputed that the university receives federal funding and that it excluded or denied Gash educational benefits by expelling him. The crux of Gash's appeal is whether the university discriminated against him based on sex. *See Columbia Coll. Chi.*, 933 F.3d at 854.

A plaintiff bringing a Title IX claim can show discrimination on the basis of sex in many ways. Although the factors assessed are case dependent, the "ultimate inquiry must consider the totality of the circumstances." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 792 (7th Cir. 2022); *see Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 924 (7th Cir. 2020) ("The district court appears to have erred by doing what we have repeatedly said a court should not: 'asking whether any particular piece of evidence proves the case by itself,' rather than aggregating the evidence 'to find an overall likelihood of discrimination.'" (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 763, 765 (7th Cir. 2016)). We ask, "do the alleged facts, if true, raise a plausible inference that the university discriminated against [Gash] 'on the basis of sex'?'" *Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019).

To survive the university's motion to dismiss, Gash must plausibly allege sex discrimination. In his complaint Gash points to several instances in which he claims the university discriminated against him based on sex.

First, he cites public pressure and reliance on federal guidance. Gash alleges that 2011 and 2014 federal guidance on Title IX and Sexual Violence caused universities, including Rosalind Franklin, under a threat of rescission of federal funding, to adopt policies that make it easier for victims of sexual assault to make and prove their claims. Second, Gash says the

university arbitrarily extended its jurisdiction to off-campus conduct to pursue the complaint against him. This violated the university's own policies and the 2020 Title IX regulations, which, he says, indicates sex bias. Third, Gash raises several procedural mistakes. These include that: (a) the Title IX director prevented Gash from withdrawing from the university; (b) the investigator overlooked any evidence tending to dispute Roe's credibility; and (c) the hearing panel erred by removing Gash during testimony, treating the parties disparately during the proceeding, ignoring flaws and inconsistencies in Roe's account, and placing the burden on Gash to show that he obtained consent, despite his intoxicated state.

*1. Public Pressure and Reliance on Education Department Guidance*

Gash alleges that external pressure from the federal government—embodied in policy documents such as the Department of Education's 2011 "Dear Colleague Letter" and its 2014 "Questions and Answers on Title IX and Sexual Violence" (the "2014 Q&A")—caused the university to take an overzealous approach to investigating and punishing sexual misconduct among students and implement policies that discriminated against men.

Specifically, Gash claims that while the 2011 and 2014 guidance directed universities "to take immediate action" to address sexual violence and harassment, it "de-emphasized fair process" for the accused. He claims the guidance failed to require a presumption of innocence, directed schools to minimize the burden on the complainant, limited cross-examination, and required schools to apply a "preponderance of the evidence" standard in evaluating allegations of sexual misconduct, among other things.

This is not the first time our court has heard this argument. *See, e.g., Columbia Coll. Chi.*, 933 F.3d at 855 (discussing the 2011 "Dear Colleague Letter"). Our fellow circuits have heard it too. *See, e.g., Doe v. Samford Univ.*, 29 F.4th 675, 691–92 (11th Cir. 2022); *Doe v. Univ. of Denver*, 952 F.3d 1182, 1192 (10th Cir. 2020); *Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 948–49 (9th Cir. 2020); *Rossley v. Drake Univ.*, 979 F.3d 1184, 1192–93 (8th Cir. 2020); *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018); *Plummer v. Univ. of Houston*, 860 F.3d 767, 779 (5th Cir. 2017) (Jones, J., dissenting); *Doe v. The Citadel*, No. 22-1843, 2023 WL 3944370, at *4 (4th Cir. 2023) (unpublished) (per curiam) (citing *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 236 (4th Cir. 2021)); *Doe v. Univ. of Scis.*, 961 F.3d 203, 205, 210, 213–14 (3d Cir. 2020); *Menaker v. Hofstra Univ.*, 935 F.3d 20, 34 (2d Cir. 2019); *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 336 n.48 (1st Cir. 2022).

But the guidance documents from 2011 and 2014 were rescinded long before the proceedings at issue here took place. The Department of Education replaced them with guidance emphasizing that "[a]ny rights or opportunities that a school makes available to one party… should be made available to the other party on equal terms[,]" which Gash concedes. Plus, Gash's complaint does not contain any specific allegations that university officials involved in his due process were accountable in any way to the previous guidance. Gash's "allegations about a government policy that has been rescinded and replaced do not assist him in crossing 'the line between possibility and plausibility of entitlement to relief.'" *Samford Univ.*, 29 F.4th at 692 (citing *Twombly*, 550 U.S. at 557 (cleaned up)); *see also Columbia Coll. Chi.*, 933 F.3d at 855–56 (holding that "generalized allegations" about "the 'Dear Colleague' Letter," even when combined with allegations of procedural

impropriety, did not permit a "plausibl[e] infer[ence] that [the] investigation or adjudication was tainted by an anti-male bias").

Moreover, this court has recognized that "[p]ublic pressure is not enough on its own to support a claim of discrimination … ." *Univ. of S. Ind.*, 43 F.4th at 792; *see also Columbia Coll. Chi.*, 933 F.3d at 855 (a plaintiff must combine general allegations about public pressure "with facts particular to his case to survive a motion to dismiss"). As an allegation of public pressure based on now rescinded guidelines, this argument fails.

*2. Extension of Jurisdiction*

Gash also argues that the university's extension of its jurisdiction to off-campus conduct violated the 2020 Title IX regulations and its own Student Handbook. He claims this extension is indicative of sex bias.

This court has been cautious when reviewing Title IX claims where the alleged misconduct took place off campus. We recently questioned whether Title IX applied at all "to student-against-student misconduct that appears to be unrelated to a university or its facilities." *Doe v. Trs. of Ind. Univ.*, 101 F.4th 485, 489 (7th Cir. 2024). Like there, we are not required to address that question today. "Any contest under Title IX to the university's response depends on proof that it engaged in sex discrimination." *Id.* And Gash has not plausibly alleged how the university's extension of its jurisdiction means it discriminated against Gash on the basis of sex. The key word in the regulation he cites is "potentially." Without further evidence of sex discrimination or case law, Gash has not shown that the university's extension of its

jurisdiction violated Title IX's sex discrimination. His conclusory allegations cannot support his claims.

*3. Procedural Mistakes*

Gash points to numerous mistakes by the university. These occurred during his attempt to withdraw from school, in the pre-hearing conference, investigation, and report, as well as at the hearing.

*Withdrawal from school.* Gash claims the university showed bias against him when the director of Title IX proceedings prevented him from withdrawing from the university, despite his having received prior approval from the registrar and the dean's office. The director acted outside her authority, he argues, when she reversed his approved withdrawal request in order to continue the investigation.

Other than conclusory assertions, though, Gash does not offer any fact showing that the university or its officials denied his withdrawal attempt out of anti-male bias. He just infers that because he was not allowed to withdraw, the university and its officials must have been biased against him. But even if they were biased against Gash, he does not allege that the bias was sex-based. If anything, these errors could show pro-victim or pro-complainant—rather than anti-male—bias. Because Gash does not plausibly allege that the refusal of his withdrawal request was based on his sex, his claim fails.

*Pre-hearing conference, investigation, and report.* Gash alleges the Title IX director exhibited bias against him during the pre-hearing conference. Given concerns about how his report was written, Gash requested that the Title IX investigator appear at the conference for questioning. The director denied Gash's request. She said any process concerns should have been

raised earlier, and she accused Gash's advisor of "shredding" the investigation report and attempting to circumvent the process. Per Gash, the director, in front of the hearing panel, commented unfavorably after Gash failed to answer questions due to his lack of memory. Her negative comments deprived Gash of a neutral panel, he submits.

But Gash fails to plausibly allege how these decisions were the result of anti-male bias. Even if imperfect, the director's decisions do not constitute sex discrimination. *See Univ. of S. Ind.*, 43 F.4th at 793 ("[A]ppellate courts do not quickly infer that procedural errors in a trial show the judge was biased.").

Gash also asserts that the investigator gathered evidence and produced her report in a manner biased against him. He says the investigator failed to qualify Roe's allegation of misconduct in her initial Title IX complaint as "alleged." The six-page report also overlooks any evidence tending to dispute Roe's credibility. He further criticizes the lack of forensic evidence, proof of injury, and medical records. Gash takes issue with the investigator's failure to ask Roe probing questions to discern the logic of her account. This includes the failure to ask Roe why she stayed with Gash at the bar while others left, why she brought him to her apartment instead of having the Uber driver take him home (an address that Roe knew), and why she did not contact his roommates to pick him up.

For all that, the investigator is not required to ask the same questions as would Gash or his representative. Even if the investigator offered a conclusion as to who was at fault, Title IX regulations do not prohibit or discourage an investigator from making a recommendation as to responsibility. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 FED. REG.

30026, 300435 (May 19, 2020) ("The Department [of Education] does not wish to prohibit the investigator from including recommended findings or conclusions in the investigative report."). While decisionmakers are not required to base their findings on investigators' recommendations, investigators are permitted under Title IX to provide such recommendations in their reports. Critically, Gash does not connect how the investigator's conclusion as to responsibility resulted from sex bias.

Gash also contends the hearing panel violated its obligation to (1) engage in an "objective evaluation of all relevant evidence" and (2) "provide that credibility determinations may not be based on a person's status as a complainant, respondent, or witness." 34 C.F.R. § 106.45(b)(1)(ii) (2020).[1] He points to several instances during the hearing which he says show the panel breaching these requirements. These include its admission of character evidence, what he perceives as disparate questioning of him and Roe, and their removal when other witnesses testified. He also objects to how and when the panel allowed or precluded certain inquiries.

---

[1] Recently, the Department of Education updated its Title IX regulations. *See* 34 C.F.R. § 106 (2024). Though new regulations exist, they are not retroactive. *See id.* § 106.45 (noting the final rule is scheduled to take effect on "August 1, 2024"); *see also* Discussion of Comment on Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 FED. REG. 33474, 33805 (April 29, 2024) (explaining "the Department will not—and does not have the authority to—enforce these final regulations retroactively; they apply only to sex discrimination that allegedly occurred on or after August 1, 2024."). So, the 2020 regulations apply to this case.

Again, although the hearing panel's decisions may not have been perfect, as alleged by Gash they do not show sex discrimination. *See Univ. of S. Ind.*, 43 F.4th at 793. He plausibly claims that the panel may have been pro-victim, but not anti-male and thus in violation of Title IX's prohibition against sex discrimination.

Our decisions in *Doe v. Purdue* and *Doe v. Columbia College Chicago* support this conclusion. In *Purdue*, the plaintiff made plausible allegations of gender discrimination. *See* 928 F.3d at 657. He pointed to university officials discrediting the testimony of all males and crediting the testimony of all females, "candidly stat[ing] that they had not read the investigative report[,]" refusing the male accused "permission to present witnesses, including character witnesses[,]" preventing him from reviewing certain evidence, and more. *Id* at 658. In contrast, in *Columbia College Chicago*, the accused was able to review all evidence, submit evidence, present witnesses, and submit "questions to be asked of Roe on cross-examination." 933 F.3d at 854–56. There, we held "there is simply no way to plausibly infer that [the university's] investigation or adjudication was tainted by an anti-male bias." *Id.* at 856. The process Gash was provided echoed that in *Columbia College Chicago*. Like there, we conclude he has not plausibly alleged sex-based discrimination.

*Conduct of the hearing.* Gash also challenges how the panel administered the virtual hearing.

Initially, he argues that the panel's decision to remove him from the proceeding during the testimony of Roe's witnesses supported an inference of sex discrimination. The panel gave Gash the right to cross-examination through his advisor. Gash

offers examples when he says his absence hindered his advisor's ability to question witnesses.

During cross-examination of Roe, the hearing panel stopped Gash's advisor and permitted a witness to enter the Zoom meeting. The panel explained that the witnesses had been scheduled to appear at certain times. Gash's advisor objected and requested that he be allowed to continue his cross-examination of Roe. The hearing panel overruled his objection and proceeded with the testimony of all witnesses before Gash's advisor finished questioning Roe.

The hearing panel has the discretion to control the schedule at the hearing. 34 C.F.R. § 106.45(b)(6)(i) (2020) ("Such cross-examination at the live hearing must be conducted directly, orally, and in real time by the party's advisor of choice and never by a party personally, notwithstanding the discretion of the recipient under paragraph (b)(5)(iv) of this section to otherwise restrict the extent to which advisors may participate in the proceedings."). Gash's advisor was able to continue and to finish cross-examination of Roe, so this contention is a non-starter.

Gash also points out that his advisor was told to "move along" when questions to Roe about her U.S. Army self-defense training were deemed irrelevant. Yet, the panel's directive does not violate Title IX. Parties in a Title IX hearing are only permitted to ask "relevant" questions. *Id.* Redirecting questioning during a hearing is not an instance of sex-based discrimination.

Gash complains vigorously about the panel's decision to remove both parties from the virtual hearing during the witness presentations. As a result of that decision, Gash could not

see or hear the testimony offered by Roe's witnesses. This was a violation of the 2020 Title IX regulations. *See id.* ("Live hearings pursuant to this paragraph may be conducted with all parties physically present in the same geographic location or, at the recipient's discretion, any or all parties, witnesses, and other participants may appear at the live hearing virtually, with technology enabling participants simultaneously to see and hear each other.").

To Gash, his removal deprived him of the opportunity to challenge the testimony offered by the witnesses, offer his advisor suggested follow-up questions in real time, and respond to the information presented by the witnesses. This was not harmless error, Gash submits, because the violation damaged his ability to challenge the credibility of a witness who the hearing panel credited in its decision. For example, Gash could not discuss with his advisor what that witness said, suggest questions for that witness, and describe to his advisor his previous conversations with that witness.

Even if all true, it does not follow from these errors that sex-based discriminatory animus motivated Gash's removal from the hearing. Both Gash and Roe were required to leave the Zoom meeting during the witnesses' testimony. The error applied equally to accused and accuser.

Gash responds that the inability to observe the testimony of adverse witnesses cannot apply equally to both parties when the impact of the error on one party (the accused) differs so significantly from the impact on the other party (the accuser). To Gash, Roe as the accuser did not need to observe the cross-examination of her own witnesses—who presumably intended to offer supportive testimony—because Roe did not face the same consequences as Gash.

At the same time, Gash cites no authority for his position. Instead, he refers to several cases (many out of circuit) for the proposition that accused students have the right to cross-examine adverse witnesses. As this court has explained, where a "policy applied to every respondent and every complainant, regardless of sex[, t]he university did not act with an anti-male bias against [respondent] by enforcing a generally applicable policy that also applied to [complainant]." *Univ. of S. Ind.*, 43 F.4th at 797. So, despite the university's technical violation, the district court correctly held that both parties were equally burdened by the panel's decision, and thus it does not support an inference of sex discrimination.

Gash also claims that the investigator and the hearing panel ignored flaws and inconsistencies in Roe's statements and testimony. For example, Roe said she did not consent, but she never raised her voice at any point that night or attempt to alert her roommates or others. Gash adds that Roe testified she did not struggle or attempt to stop him, but that as "a trained member of the United States Army" she had the opportunity and physical strength to do so. To Gash, Roe's description of the sexual encounter, including her position on top of him and her admission that Gash did not use force, meant that she had to have been an active participant. Roe said Gash slept downstairs when she asked him to, which to Gash does not comport with Roe's descriptions of his lack of care for her and her requests. Gash also highlights that the next morning Roe texted him to ask if he got home safely, and she did not claim to have suffered any injuries. For Gash, the failure to note all these inconsistencies led to the university's erroneous finding that he was responsible for sexually assaulting Roe.

A decision on a complaint like Roe's often turns on credibility. Even if Gash is correct that based on these facts the panel reached the wrong conclusion, he has not alleged facts that the panel did so because he is male. That leaves his Title IX claim subject to dismissal.

Gash further points out that the decision letter omitted that he was severely intoxicated on the evening in question. In addition, the letter failed to discuss Gash's inability to consent. The university nevertheless faulted Gash for saying he did not recall obtaining consent to engage in sexual activity with Roe. Gash's incapacitation would have influenced his ability to consent (as the university defines that term) to sexual activity with Roe. Yet, the panel did not consider that definition when it concluded Gash was responsible for obtaining consent. This shows, Gash argues, the hearing panel's sex bias about the role of men and women in sexual encounters.

Even if the university erred on these questions of capacity and consent, that error is no more suggestive of sex discrimination than it is of lawful alternative explanations, like incompetence, impatience, or pro-complainant bias. Gash offers conclusory statements, rather than pleading facts, that his sex was the motivating factor for the university's actions.

*       *       *

The university committed errors while investigating the complaint against Gash. Just so, those errors did not indicate sex-based discrimination. They are facially "divorced from [sex]." *Columbia Coll. Chi.*, 933 F.3d at 856. At most, they demonstrate a pro-victim or pro-complainant bias that cannot support a claim for sex discrimination because both men and women can be victims of sexual assault. *See Univ. of S. Ind.*, 43

F.4th at 798 n.8 (stating that "some federal courts have reasoned that evidence of a school's anti-respondent bias does not necessarily support an inference of anti-male bias" and noting that the Seventh Circuit had not resolved that question yet and would not do so in that case). For that reason, Gash's Title IX claim was properly dismissed.

**B**

Gash's final contention is that the district court incorrectly dismissed his Illinois state law breach of contract claim. He identifies several errors the university committed in investigating and adjudicating the charge against him that breached their contract with him. These include violating Title IX and the university's own policies by extending its jurisdiction to off-campus conduct. Gash maintains the panel also failed to act in a fair and impartial manner, and it issued a decision against the weight of the evidence.

"Illinois courts have expressed a reluctance to interfere with academic affairs and have held that a student's breach of contract claim must involve decisions that were arbitrary, capricious, or made in bad faith." *Columbia Coll. Chi.*, 933 F.3d at 858 (citing *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699 (2004) (discussing plaintiff's breach of contract claim against a university after the university found plaintiff violated the sexual misconduct policy and suspended plaintiff)). So, the university "would not be liable even if we find it exercised its academic judgment unwisely; rather it must have disciplined a student without any rational basis." *Id.* (citing *Frederick v. Nw. Univ. Dental Sch.*, 617 N.E.2d 382, 387 (1993)).

The facts alleged in Gash's amended complaint do not support his assertion that the university arbitrarily or

capriciously carried out its policy or acted without a rational basis. As this court has stated, "[t]he burden on [plaintiff] is high. To find in his favor we must find that [the university] did not exercise its academic judgment at all, instead acting arbitrarily or in bad faith in its treatment of plaintiff." *Id.* (cleaned up). Gash's assertion that the university acted in an "arbitrary, predetermined, and unwarranted" manner that was "motivated by [sex] bias," is conclusory and unsupported by facts alleged in the amended complaint. So, we affirm the district court's dismissal of the breach of contract claim against the university.

## III

Rosalind Franklin University committed errors when investigating and prosecuting Gash for sexual assault. But those errors did not evidence sex-based discrimination against Gash or breach of contract, so we AFFIRM the district court and dismiss the complaint.